LANDER *v.* MERCANTILE BANK.

APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE SIXTH CIRCUIT.

No: 227. Argued April 18, 1902.—Decided June 2, 1902.

This suit was brought in the Circuit Court of the United States for the Northern Division of Ohio, Eastern District, to restrain the collection of certain taxes levied by the officers of Cuyahoga County, Ohio, upon the appellee bank. The grounds of the suit were that the acts of the taxing officers of said county were in violation of the "rights of the plaintiff (appellee) and of its shareholders accorded to them by section 5219 of the Revised Statutes of the United States, securing to said shareholders a restriction of the rate and limit of taxes assessed upon their said shares to that assessed upon other moneyed capital in the hands of individual citizens of the State of Ohio." The bill alleged that the plaintiff (appellee) was a national bank, and stated the capital stock of the bank and the number of shares into which it was divided; that its cashier made the proper returns of the resources and liabilities of the bank to the county auditor; that the latter fixed the value thereof, as required by section 2766 of the Revised Statutes of the State, after deducting the assessed value of the real estate of the bank, and transmitted a statement of his action, and a copy of the report made by the cashier, to the state board of equalization, for incorporated banks and that board, professing to act under sections 2808 and 2809 of the Revised Statutes of the State, increased the valuation of the shares without notice to the bank or to its shareholders, and that the board was hence without jurisdiction to make such increase, and "its action in respect thereto was void and of no effect." It was averred "that said state board of equalization knowingly and designedly did fix a much higher per centum of valuation and assessment for taxation upon the shares of the plaintiff's capital stock than was assessed

upon other moneyed capital in the hands of individual citizens of the State of Ohio, and much higher than that fixed on other moneyed capital in the hands of such citizens in said county of Cuyahoga and said city of Cleveland." After the answer was filed, the case was referred to a master, and upon the coming in of his report, and, after considering the exceptions of the parties to it, the court dissolved the injunction which had been granted and dismissed the bill. That action was reversed by the Circuit Court of Appeals and the cause remanded, with instructions to enter a decree in favor of the complainant (appellee here). Thereupon an appeal was taken. *Held* that the judgment of the Court of Appeals should be reversed, and the judgment of the Circuit Court should be affirmed.

This suit was brought in the Circuit Court of the United States for the Northern Division of Ohio, Eastern District, to restrain the collection of certain taxes levied by the officers of Cuyahoga County, Ohio, upon the appellee bank. The grounds of the suit were that the acts of the taxing officers of said county were in violation of the " rights of the plaintiff (appellee) and of its shareholders accorded to them by section 5219 of the Revised Statutes of the United States, securing to said shareholders a restriction of the rate and limit of taxes assessed upon their said shares to that assessed upon other moneyed capital in the hands of individual citizens of the State of Ohio."

The bill alleged that the plaintiff (appellee) was a national bank, and stated the capital stock of the bank and the number of shares into which it was divided; that its cashier made the proper returns of the resources and liabilities of the bank to the county auditor; that the latter fixed the value thereof, as required by section 2766 of the Revised Statutes of the State, after deducting the assessed value of the real estate of the bank, and transmitted a statement of his action, and a copy of the report made by the cashier, to the state board of equalization, for incorporated banks and that board, professing to act under sections 2808 and 2809 of the Revised Statutes of the State, increased the valuation of the shares without notice to the bank or to its shareholders, and that the board was hence without jurisdiction to make such increase, and " its action in respect thereto was void and of no effect."

It was averred " that said state board of equalization know-

ingly and designedly did fix a much higher per centum of
valuation and assessment for taxation upon the shares of the
plaintiff's capital stock than was assessed upon other moneyed
capital in the hands of individual citizens of the State of Ohio,
and much higher than that fixed on other moneyed capital in
the hands of such citizens in said county of Cuyahoga and said
city of Cleveland."

Section 2730 of the Revised Statutes of Ohio was set out in
the bill, which defines " credits " to be the excess of certain legal
claims and demands over and above legal and *bona fide* debts,
and it was averred " that a large amount of moneyed capital in
the hands of individual citizens of the State of Ohio invested
in promissory notes and other legal obligations, securities, claims
and demands, amounting to several hundred millions of dollars,
is by the aforesaid provision, allowing a deduction of legal *bona
fide* debts to be made therefrom, expressly exempted from tax-
ation."

Figures were given in support of the allegation as to indi-
viduals, " building and loan incorporations," which, it was al-
leged, " were empowered and authorized by said statute to
borrow and loan money and to do a general banking business
with their members and depositors," and savings banks, in
which it was alleged that there was on time deposit an amount
exceeding the entire capital stock of all the national banks in
the State, which deposits were credits belonging to the depos-
itors from which legal *bona fide* debts were authorized by the
statute to be deducted in order to ascertain the taxable value of
said deposits.

That on account of such exemptions unlawful discrimination
was practiced against moneyed capital invested in national
banks, and that the tax lawfully assessed and paid on its shares
by complainant amounted to upwards of twenty per cent of the
income which arose from its operations.

That each of the shareholders was indebted in an amount of
*bona fide* debts, " exclusive of the exceptions allowed by the
statute, to an amount equal to the actual and par value of the
number of shares specified opposite their respective names, and
which said excess of said debts over said credits as aforesaid,

the said shareholders above named were entitled to have deducted from the assessed value of said shares so severally owned by them."

Proof of this indebtedness was submitted to the county auditor, but he refused to make any deduction, and threatened to collect taxes on such shares with said deductions disallowed.

That the right to have such deductions made was adjudicated in a suit brought by plaintiff on the 8th of April, 1887, against Horatio N. Whitbeck, the predecessor of the defendant, as treasurer of Cuyahoga County, and also in other suits brought against other predecessors of the defendant, in which said suits the issues were the same as those in the present suit, and that each of the defendants in said suits " represented the same interest, sustained the same relation, was charged with the same duties to the public as the present defendant," and in which the issues determined and adjudged " involved the same subject-matter, and that the judgments therein given are wholly unreversed and still in full force and operation."

The bill prayed for an injunction of the collection of any of the taxes which were charged on the duplicate tax list of the county, "including those levied on such unlawful increase of valuation by such state board of equalization for incorporated bank shares, permitting, however, said treasurer, without prejudice to his rights in the premises, to receive the amounts so as aforesaid tendered by the plaintiff to him."

The answer admitted some of the averments of the bill and tendered issue on those upon which complainant based the charge of illegality of and discrimination in the assessment. As to the action of the auditor the answer alleged that " the auditor was greatly deceived and mislead by complainant's statement of the true value of its returns to him for taxation, and that the returns so made did not exceed forty (40) per cent of the actual value of said property and assets of complainant; when in truth and in fact the said complainant should have returned the same at its true value in money." And also averred " that said board of equalization began work at the time the statutes require, and continued its work continuously, but for want of the necessary information it could not complete its work earlier than December 6, 1897."

In an amendment to the answer the deception of complainant cashier as to the true value of the shares was again averred, and the justness and legality of the action of the state board of equalization were circumstantially asserted.

As a second defence it was alleged that section 167 of the Revised Statutes of Ohio was in *pari materia*, and was a part of the taxing system of the State and of the machinery for the collection of the public revenue of the State, and provided that when the amount of taxes to be remitted exceeded $100, as in the case at bar, that the board of revision provided for by said section, consisting of the governor, auditor of State and attorney general, was constituted an appellate board to the action of the state board of equalization, of shares of incorporated banks, and had the power and authority and jurisdiction to review, revise and correct all excessive, illegal or erroneous assessments, fines or judgments that might have been made by said board of equalization; that complainant, not having appealed to such board of revision, and by refusing to submit to such board its "cause and the matters in dispute, had not exhausted its usual and ordinary remedy at law," and had not exhausted the remedies provided by the statutes of Ohio, and hence the court had "no jurisdiction in equity to hear and determine said cause, and said plaintiff bank should not be permitted to further prosecute its action herein."

The case was referred to a master, and upon the coming in of his report, and, after considering the exceptions of the parties to it, the court dissolved the injunction which had been granted and dismissed the bill. 98 Fed. Rep. 465. That action was reversed by the Circuit Court of Appeals and the cause remanded, with instructions to enter a decree in favor of the complainant (appellee here). 109 Fed. Rep. 21. Thereupon this appeal was taken. Other facts are stated in the opinion. Most of the sections of the Revised Statutes of Ohio on the subject of taxation, which are applicable to the questions involved, are printed at length in 173 U. S., page 209, *et seq.* Other sections are inserted in the margin[1] or referred to in the opinion.

[1] "SEC. 2807. The said boards (certain city boards,) shall hear complaints and equalize the assessment of all personal property, moneys and

*Mr. J. M. Sheet* and *Mr. Smith W. Bennett* for appellant. *Mr. P. H. Kaiser* was on their brief.

*Mr. W. W. Boynton* for appellee.

Mr. Justice McKenna, after stating the case, delivered the opinion of the court.

---

credits, new entries and new structures returned for the current year, by the township assessors and county auditors; and they shall have power to add to, or deduct from the valuation of personal property, or moneys or credits, of any person returned by the assessor or county auditor, or which may have been omitted by them, or to add other items upon such evidence as shall be satisfactory to the said boards, whether said return be made upon oath of each person or upon the valuation of the assessor or county auditor, but when any addition shall be ordered to be made to any list returned under oath, a statement of the facts upon which such addition was made shall be entered on the journal of the boards: *Provided*, That no such addition shall be made to such list returned under oath without the board having first given reasonable notice to the person or persons whose personal property is sought to be added to or the valuation thereof increased, to appear before said board at a time and place to be fixed by said board, and show cause why such addition should not be made, or why such valuation should not be increased; . . ."

"Sec. 2808. The governor, auditor of State and attorney general shall constitute a board for the equalization of the shares of incorporated banks, and for this purpose they shall meet on the third Tuesday of June, annually, at the office of the auditor of State, and examine the returns of said banks to the county auditors, and the value of said shares as fixed by the county auditors as the same shall have been reported by the county auditors to the state auditor."

"Sec. 2809. Said board shall hear complaints and equalize the value of said shares according to the rules prescribed by this title for valuing and equalizing the values of real and personal property, and if the judgment of the board, or a majority of them, the aggregate value of all the bank property so reported to said board by the county auditors is below its true value in money, they may increase or diminish the value of said shares by such per cent as will equalize said shares to their true value in money: *Provided*, That said board shall not increase or reduce the grand aggregate value of bank shares as returned by the several county auditors by more than twenty (20) per centum.

"Sec. 2810. The auditor of State shall, forthwith after such equalization shall have been made, certify to the auditors of the proper counties the valuation, as equalized, of the shares of banks situated in such counties, which valuation shall be put on the proper tax list."

The Circuit Court of Appeals based its opinion on two quesions: (1) The jurisdiction of the state board of equalization for incorporated banks to increase, without notice to the bank, the valuation fixed by the county auditor on the shares of its stock.; (2) the fact of the former adjudications as determining the right to reduce the valuation of the shares by taking *bona fide* indebtedness therefrom. Counsel for appellee objects to a broader discussion by appellant's counsel of the case than those questions present, urging they were the only ones made by the appellee in the Circuit Court of Appeals. In view of this insistence, and as appellee took the case to the latter court, we may make them the grounds of our discussion and decision, although the first question was not passed upon by the Circuit Court.

The findings of the master sustained the allegations of the bill as to the action of the auditor, and that the board of equalization met as required by section 2808 of the Revised Statutes of Ohio, and transacted no business except to adjourn " at the call of the secretary." It met again on the 10th and 20th of September, but took no action as to the valuation of the shares of plaintiff. " On the 4th December, 1897," (the master found,) " the members of said board next meet at the call of the state auditor to consider unfinished business. The record of the meetings of said board, as originally made by the secretary, shows that at the meeting held June 15, 1897, September 10, 1897, September 20, 1897, the ' board adjourned.' At the meeting held December 4, 1897, the secretary was directed to amend the record as to each of said above-named adjournments by adding these words : ' Amended to read, "adjourned to meet at the call of the president of the board, Asa S. Bushnell, governor of the State," ' and thereupon said board adjourned *sine die.* Some time after December 4, 1897, the record was amended by the secretary as directed by said board. At none of said adjournments was a day named for the next meeting.

"Eighth. At said meeting on December 4, 1897, without complaint from any one, the members of said board, assuming to act as a board, increased the valuation of the shares of the plaintiff from $519,320.00, so fixed by the county auditor, to $642,320.00, and on the 6th day of December certified said

valuation to the auditor of Cuyahoga County, to be by him placed on the treasurer's duplicate, which was accordingly done; that neither of said meetings of the members of said board following the third Tuesday of June, 1897, was called by said secretary, and no notice or information of any kind or opportunity to be heard was given by said board, its secretary or any other person to said bank, or any of its officers, directors or shareholders of any or either of said meetings, except such as the statute gave them, to wit, section 2808, Revised Statutes, and succeeding sections; nor did they, or either of them, have any notice of any of said meetings or appear thereat, and the first information that said bank or any of its shareholders had or received of any action of the board or of the purpose to increase the value of the shares so fixed by the auditor was on the 7th day of December, 1897, after the action of the board was had and such information was conveyed by letter from the auditor of the county to the cashier of the plaintiff, notifying him of the completed action of the board; that thereupon, said bank and its shareholders, through the officers and agents of the bank duly authorized, applied to the members of said board for a hearing, and was notified that two of the members of said board were out of the State, and that December 28 was as early as the bank officers could be received; that on said day the officers of said bank, on behalf of said shareholders duly authorized, met the members of said board at Columbus, and made application for a hearing respecting the valuation of said shares and the action of said board, and notified said members of said board that such increase made on the shares of said bank was excessive and unwarranted, and protested against the same, but said hearing was denied, the members of said board declaring that the board had adjourned *sine die* and could not reconvene as a state board of equalization for banks to consider any claim or application respecting the value of said shares.

"At the time the persons who had composed the state board of equalization for banks, and who are the same persons required to act under section 167 of the Revised Statutes of Ohio, offered to convene and organize under said section 167 to consider the case of the various plaintiff banks at such time as

might be convenient for the representatives of the Cleveland banks to appear. Some doubt was expressed by some of the members of the committee that the board would not have the power under section 167 to afford as full relief as the board of equalization, and only one of the Cleveland banks appeared before the board when organized under section 167; viz., the First National Bank; the others declined to appear.

"Ninth. That the said auditor of said county of Cuyahoga, upon the receipt of the certificate from said state board of equalization, entered said valuation of $642,320.00 upon the tax duplicate of said county for the year 1897, and assessed against the same taxes at the rate of 3.03 cents on each dollar, and which amounted on said valuation to $19,462.30. The taxes on said bank shares at the said rate of 3.03 on each dollar, if assessed on the valuation of $519,320.00, as fixed by the auditor of Cuyahoga County, would have amounted to the sum of $15,735.39."

. As conclusion of law the master reported that the increase made by the board of equalization was void for want of notice to the bank or its shareholders.

The Circuit Court of Appeals concurred in the legal conclusions of the master upon the ground that "it is an elementary principle of law that tribunals vested with the power to affect the property of citizens must act with notice," and in the light of that principle considered the statutes of Ohio, and construed them to require the state board of equalization to give notice to persons to be affected by its action. That is, as we understand, notice other than the statute gives by designating the time and place of the meeting of the board.

The court deduced its conclusion from the provisions of section 2809 of the Revised Statutes of Ohio. It is there provided that "said board (board of equalization) shall hear complaints and equalize the value of said shares according to the rules prescribed by this title, and for valuing and equalizing the values of real and personal property." The title referred to is Title 13, and turning to it we find quite an elaborate system. Many boards of equalization are constituted. There are annual county boards, annual city boards, annual state

boards for railroads and for banks, decennial state, county, and city boards, and the duties of all the boards are carefully prescribed. In the sections constituting some of these boards there are references to sections constituting other boards. For instance, in section 2804, providing for a county board of equalization, there is this provision: "Said board shall have power to hear complaints, and to equalize the value of all real and personal property, moneys and credits, within the county, and shall be governed by the rules prescribed for the government of decennial county boards for the equalization of real property: *provided,* . . . the annual county board shall not increase or reduce the valuation of any real estate, except upon reasonable notice to all persons directly interested, and an opportunity for a full hearing of the question involved." The rules referred to are contained in section 2814, and pertain strictly to producing uniformity of valuation. In other words, the board is enjoined to raise or reduce the valuations returned in order to make them conform to the standard of valuation prescribed by the statute. There is a limitation upon the power of the board with which we are not concerned. The board afterwards sits as a board of revision.

Again, section 2705 provides for a city board of equalization, and it is given all the "powers," and is to be "governed by the rules, provisions and limitations prescribed in the next preceding section for the annual county board." Section 2804, *supra.* So, again, in section 2805 certain state boards are given "all the powers provided by law for decennial county boards for the equalization of real property, and shall be governed by the rules prescribed for such decennial county boards for equalizing the valuations returned by district assessors." These careful provisions for equalization of valuation seems to have been caused by the command of the constitution of the State that taxation should be by "uniform rule," and, we think, furnished the key to the meaning of section 2809. In execution of the constitution of the State that section defined and enjoined the powers of the board in the equalization of values, and did not intend to require personal notice to shareholders of the exercise of those powers.

We agree with the Court of Appeals that some notice was necessary to be given, and the question occurs, did the statute give notice by fixing the time of the meeting of the board? It seems to be conceded that the statute did do so as to the first meeting of the board, and that such notice would have been sufficient as to subsequent adjournments if they had been made to days certain.

In the case of *Hamilton* v. *Dempsey*, 20 Ohio St. 168, the Supreme Court of Ohio decided that the law of the State which fixed the time and place of meeting of a board of equalization, but which provided for no other notice, nevertheless gave notice to every citizen whose property, real or personal, had been returned for taxation.

In *State ex rel.* v. *Jones, Auditor*, 51 Ohio St. 492, the same proposition was affirmed in passing upon the law providing for the taxation of the property of express, telegraph and telephone companies. It was contended, and we quote from the opinion of the court—

"The property of the express company, it is alleged, was taken without due course of process of law in this, that the act in question does not provide for any notice to the company, nor for a hearing by the board of appraisers and assessors, nor for an appeal to any superior authority for the correction of illegal, erroneous or excessive valuations."

Replying to the contention, the court said:

"The law itself states the time when the board shall meet, and the express company could not ignore the time of meeting. The meetings of the board are not secret, and the company had a right to be present and explain the statement rendered of its property and the value thereof. Indeed, without notice from the board, or by the terms of the law, the company would have been unable to make the return prescribed by the statute. And of the company's return it may be said, in the language of the opinion in the *Kentucky Railroad Tax cases*, 115 U. S. 321: 'This return, made by the corporation through its officers, is the statement of its own case, in all the particulars that enter into the question of the value of its taxable property, and may be verified and fortified by such explanations and proofs as it may see fit to insert.'"

The court also cited *The State Railroad Tax cases,* 92 U. S. 575.

In the latter cases, it was claimed that the state board of equalization had no power to increase the assessment or value of railroad property reported by the companies to the state auditor and by him to the board without notice to the companies, and for want of such notice "the whole assessment and the levy of taxes" became void. The court said, by Mr. Justice Miller: "It is hard to believe that such a proposition can be seriously made." After pointing out the "absurdity" of the claim, he added: "Nor is there any hardship in the matter. This board has its time of sitting fixed by law. Its sessions are not secret. No obstruction exists to the appearance of any one before it to assert a right or redress a wrong; and, in the business of assessing taxes, this is all that can be reasonably asked." See also *Hagar* v. *Reclamation District,* 111 U. S. 701; *Palmer* v. *McMahon,* 133 U. S. 660; *Merchants' Bank* v. *Pennsylvania,* 167 U. S. 461.

We do not think the principle of those cases is affected by an adjournment of the Ohio board without fixing a date of meeting. How were the rights of the bank affected and to what inconvenience was it put? It did not appear at the first meeting of the board. It rested on the evidence it had returned to the auditor, and it knew that the report it had made to the comptroller of the State would be before the board, and it knew also the duties and power of the board. The board was a public tribunal, open to be invoked, and charged with duties, and necessarily subject to adjournments. What it had done the bank could have easily ascertained, and as easily what it contemplated doing. An inquiry would have ascertained both. By the exertion of a very trifling trouble the bank would have been informed of every meeting of the board.

2. The master's report on the claim of *res judicata* was as follows:

"The master finds the issues made by the bill and answer, relating to the former adjudications of the question of the right to deduction of legal *bona fide* indebtedness of the stockholders from the value of their shares in determining their value for

taxation, with the defendant; that such fact or right was not directly involved in the actions set up in the bill and it was not therein by said courts adjudicated and decided, and the fact carried into judgment in favor of said bank, that its stockholders were entitled to said deductions of indebtedness from the value of their shares, under the same legislation now existing on the subject, both state and national, and that said judgments are not in full force and effect, as against said defendant."

The Circuit Court concurred with the master. The court, after expressing that its impressions at the oral argument had been to sustain the plea of former adjudication, said:

" Looking into the bill, however, in the former case, and after an examination of the case of *National Bank of Wellington* v. *Chapman*, I find that, in order to support the averments of the bill, it was necessary in that case for the complainant to rely, not only upon the statute of Ohio defining credits, but also on its practical operation in exempting moneyed capital in the hands of individuals in Ohio from taxation. The practical operation of a law of that character, to show how much, if any, discrimination there is, is a question of fact to be determined upon the evidence."

And further:

" The adjudication, therefor, upon which the complainant relies, is an adjudication, not of law, but of fact; not of the fact at issue in the present case, but of the fact as to the practical operation of the law at the time of that adjudication, to wit, in 1887, 1893, and in 1894."

The Circuit Court of Appeals reviewed the *Whitbeck case*, 127 U. S. 193, and considered its interpretation by this court in *National Bank of Wellington* v. *Chapman*, 173 U. S. 205. From that review the court declared that it was not " prepared to say that the judgment in that case was *res judicata* as to the rights of complainant's stockholders, to deduct their debts from their shares of national bank stock." But to the other adjudications the court expressed a different view and held them to be prior and conclusive adjudications of the issue now involved. In other words, we understand the court to decide, that in the former cases unlawful discrimination was made by the Ohio

statute, "and that it had been adjudicated therein (in the cases pleaded) that national bank shareholders were entitled to deduct their debts from the value of their shares for the purpose of taxation," and that the adjudication should prevail as an estoppel against the appellants, notwithstanding the statute has been subsequently construed not of itself to work such discrimination. The conclusion is claimed to be sustained by the decision of this court in *New Orleans* v. *Citizens' Bank.* 167 U. S. 371.

A consideration of the records in the pleaded cases becomes necessary.

In the *Whitbeck* case the plaintiff (appellee here) averred that it was a bank and had been discriminated against; that its cashier had made reports to the taxing officers according to law; the auditor *pretended* to proceed in fixing value of its shares in accordance with section 2766 of the Revised Statutes of Ohio, and that the value placed by him thereon was knowingly in excess of the value fixed in said county on other moneyed capital in the hands of individual citizens of the State, city and county. The state board of equalization assumed, and pretended to comply, with sections 2808 and 2809, and examined the report of the cashier and return of the auditor, and pretended to equalize said shares to their true value in money, and fixed their valuation at $495,774.76.

The further action of the board was described as pretended with the design, and the execution of the design, of placing an excessive value on the shares; that a large part of the stock of the bank was invested in United States securities and the lawful money thereof, and the tax levied and assessed was in violation of law and unauthorized and void.

The requirements of the constitution of the State were cited and the restriction of the taxation of national bank shares by the Revised Statutes of the United States was stated.

The definition of credits by section 2730 was given, and it was averred that the law required persons who listed property for taxation to set forth their credits as defined; that a large part of moneyed capital in the hands of individuals, which was invested in notes, obligations and credits, were, by the provi-

sions allowing the deduction of *bona fide* debts, exempted from taxation, which made a discrimination against national bank shares in violation of section 5219 of the Revised Statutes of the United States.

· The names of the shareholders were set out, and it was averred that they were indebted in an amount in excess of credits equal to the value of their respective shares.    That at the time of the return and statement to the auditor the fact of such indebtedness was not known, nor was there opportunity given the shareholders to deduct such indebtedness, nor was there provision made for the deduction of such indebtedness from the value of the shares, but before the taxes became due proof of the indebtedness was tendered and a demand made for its reduction.    The proof and demand were refused, and the payment of the whole tax insisted on.    The illegality of the taxes was asserted for the following reasons :

1. Because in violation of the act of Congress under which the bank was incorporated.

2. The laws of Ohio permitted the owner of credits to deduct therefrom his *bona fide* debts, and denied such right to the "owner of capital stock" of the bank, and required him to list "the whole number of shares owned by him and not simply the excess of the value of said shares over his indebtedness."    A discrimination was hence averred to result from the taxation of such shares at much greater rate than was assessed upon other moneyed capital in the hands of individual citizens.

3. The property of the bank was not valued and taxed as the property of individuals, nor was equality preserved in the valuation of the shares as compared with other property in the locality, but the valuation was twice as high, while the rate of levy was the same.

4. Illegality of the action of the board of equalization under the state laws.

5. The taxation of the shares was at a greater rate than was assessed upon other moneyed capital in the hands of individuals.

6. That by the proceedings had in the assessment and levy of the taxes had the effect to deprive the bank and its share-

holders, " both in the manner of valuation and equalization, of all benefit of the constitution and general laws of the State, by which only uniformity in the burdens of taxation upon all description of property could be secured, to take from them the security afforded by the limitations of the acts of Congress, and to impose upon them such excessive exactions as to make the franchise granted by said act comparatively valueless."

There were averments of grounds of relief in equity which we need not quote.

The respondent filed a demurrer to the bill, which was overruled. An answer was then filed, which denied the allegations of the bill, from which it was claimed discrimination against the complainant and its shareholders resulted.

The following are quotations from the answer: The defendant denies " that any of the shareholders of said banking association, at the times named in said bill of complaint, were indebted or owing to others of *bona fide* debts, a sum in excess of the credits from which, under the laws of Ohio, he was entitled to deduct said debts to an amount equal to the value of his said shares or any part thereof." He denies that either of said shareholders was then indebted in any sum whatever, or that, even if any of them was so indebted as claimed in said bill of complaint, he is thereby entitled to deduct the excess of such indebtedness over his credits from the assessed value of his said shares, or that for any reason said shares of stock should not have been placed on the tax duplicate and no tax assessed thereon. This defendant denies the averment in said petition that neither of said shareholders authorized any one to list his said shares for him. He denies that it was necessary for said shareholders so to do. . . . That any sum whatever should be deducted from the valuation of the shares of the capital stock owned by said shareholders named in said bill of complaint. This defendant further denies that the taxes so levied and assessed on the shares of said complainant's stock are, for the reasons alleged in said bill of complaint, or for any reason, unjust, illegal or void."

A special master was appointed " to examine the evidence and record on file and to report who, if any, of the shareholders of

the complainant, on the day preceding the second Monday of October, 1885, had *bona fide* indebtedness which should have been deducted from the valuation of the shares."

The master reported " that having examined the evidence and heard the claim of counsel, he finds and reports that all the shareholders are entitled to the deductions as charged in the bill, except the following, who should be taxed for the amount stated, viz.: E. R. Perkins had credits subject to taxation above his indebtedness on the day named to the sum of $4374.40; C. L. Murfry had credits subject to taxation above his indebtedness on the day named to the sum of $724; Robert L. Chamberlain had credits subject to taxation above his indebtedness on the day named to the sum of $4448; James Parmelee had credits subject to taxation above his indebtedness on the day named to the sum of $3113.60; James Barnett had credits subject to taxation above his indebtedness on the day named to the sum of $17,792."

A decree was entered in accordance with the finding, and recited that the court found all the allegations of the bill to be true except as to the three stockholders mentioned by the master. Except as to them, the respondent and his successors in office were enjoined from collecting the taxes remaining unpaid.

This decree was afterwards by consent vacated, and two questions certified to this court. The only one with which we are concerned was as follows:

" Whether the taxation of national bank shares in the State of Ohio in the year 1885, without permitting the shareholder to deduct from the assessed value of his shares the amount of his *bona fide* indebtedness existing on the Wednesday next preceding the second Monday in May in 1885, and on the day preceding the second Monday in April, 1885, is a discrimination forbidden by the act of Congress, the said shareholder not having deducted said *bona fide* indebtedness from any credits owned by him at either of said dates."

In the case against Kimberly, treasurer, the pleadings were substantially the same as in the *Whitbeck* case, and the following judgment was entered:

" The court further find that there should be deducted from

said first valuation the sum of $169,235, being the amount on which the particular shareholders named in said bill of complaint are not taxable, the same being less in amount and value than their *bona fide* debts from which they are entitled to have the same deducted, leaving the sum of $380,670, which is hereby declared to be the true valuation of the shares of said bank taxable under the act of Congress for said year 1888."

In the *Shields* cases, (there were two, respectively numbered 5122 and 5127,) the bills on the merits were the same as in the *Whitbeck* case, and the *Whitbeck* case was pleaded as a prior adjudication of the right of the shareholders of complainant to deduct their *bona fide* debts from the value of the shares of stock. The bill in No. 5122 alleged that "in said suit ( *Whitbeck* suit) this complainant alleged by its bill the refusal by the then auditor of said county, to allow a deduction of *bona fide* debts of the shareholders from the value of shares of stock of said complainant owned in large part by the same stockholders as those above named, and in which action said treasurer of said county, admitting said refusal to allow said deduction so joined issue as to present the question of the right of said owners of said shares, to said deduction, in view of the laws of Ohio, the said laws being the same as the present laws of the State and those under which the taxing officers of said county acted in 1892 and 1893, in making assessments and in refusing deductions to be made of *bona fide* debts of stockholders from the valuation of said shares; and the complainant says that upon the issue so joined the said court at its April term, A. D. 1887, held and determined that said shareholders were by law entitled to said deduction of *bona fide* debts from the value of their said shares, to an equal amount fixed for taxation." The same allegations were substantially made in case No. 5127.

A demurrer was filed to the bill in No. 5122, which was overruled, and the respondent electing to stand by his demurrer, the following judgment was entered:

"The parties appearing by counsel, this cause came on for hearing, and by consent of the parties the judgment or order *pro confesso* heretofore entered in said case, is hereby vacated, and the respondent has leave to demur to said complaint; and there-

upon came the respondent and demurred to the bill of complaint; and the cause came on for hearing upon said demurrer and was argued by counsel; on consideration whereof it was ordered, adjudged and decreed that said demurrer be and the same is hereby overruled, and the defendant electing to stand by his demurrer, the court upon further hearing find the allegations of the complainant's bill to be true, and that the tax therein sought to be enjoined was illegally assessed and entered upon the treasurer's duplicate for collection. It is therefore ordered, adjudged and decreed that the defendant and his successors in office be and they are hereby perpetually enjoined from collecting or in any way or manner attempting to collect the said illegal tax set out and particularly described in said bill of complaint."

In case No. 5127 Shields did not appear, and a decree was entered restraining the collection of taxes.

The law of *res judicata* is well settled. Its essential principle is, that questions once litigated shall not be litigated again between the same parties or their privies. And it may be conceded that the appellant in the case at bar is a privy to his predecessors in the suits which are pleaded as prior adjudications, and that *res judicata* applies to tax cases if the cause of action relied on is the "thing" which was "adjudged" in a prior suit. *New Orleans* v. *Citizens' Bank, supra.*

But the final question is, what was the "thing adjudged" in the prior cases? The answer to the question is found in the pleadings in those cases and in the judgments which were entered. In the *Whitbeck* and *Kimberly* cases the judgments were substantially alike. They adjudged a deduction of the *bona fide* debts of the shareholders from the valuation of the shares. The judgment in the *Shields* case, No. 5122, was more general. It found "the allegations of the bill to be true, and that the tax therein sought to be enjoined was illegally assessed and entered upon the treasurer's duplicate for collection." The judgment in case No. 5127 was equally as general.

But those were conclusions from propositions not only of law but of fact; and granting that one of the propositions of law was the construction of the Ohio statute, (a wrong con-

struction, as has since been held,) a necessary element of fact was that the discrimination complained of was effected through the practical operation of the statute in the years the assessments were made. This was pointed out in *National Bank of Wellington* v. *Chapman*, 173 U. S. 205. In that case the same contentions were made as in this, and the same statute was passed upon. And also the effect and extent of *Whitbeck* v. *Mercantile National Bank* were carefully considered, explained and defined.

All the cases pleaded as *res judicata* were based on the *Whitbeck* case, and there was in each, as we have said, the fact of the practical operation of the Ohio statute exempting from taxation moneyed capital in the hands of individuals, and that fact determined the judgments in each case. In other words, as the Circuit Court found, the complainant in those cases (appellee here) relied not only upon the statute but upon its practical discriminatory operation. And we need not point out that judgments based on such discrimination in 1885, 1887, 1893 or 1894 cannot be conclusive proof of the existence of discrimination in 1896 or 1897.

In the case at bar the fact of discrimination was put in issue by the pleadings, and on the issue made the Circuit Court found in effect adversely to appellee. In the other cases the discrimination was either proved or admitted.

*The judgment of the Circuit Court of Appeals is reversed and the judgment of the Circuit Court is affirmed.*

Mr. Justice Gray did not hear the argument and took no part in the decision.