## A. B. DICK CO. v. SIMPLICATOR CORPORATION et al.

District Court, S. D. New York. January 21, 1929.

Archibald Cox, of New York City, for plaintiff.

Thomas Ewing, of New York City, and N. S. Amstutz, of Valparaiso, Ind., for defendants.

WINSLOW, District Judge. This is an equity action to restrain the alleged infringement of patent No. 1,526,982 for a stencil sheet, granted to plaintiff February 17, 1925, on application filed April 7, 1922, by Edward W. Hill.

A stencil sheet is a sheet adapted to be converted into a stencil for multiplying copies in duplicating machines such as those sold by the plaintiff under the name "Mimeograph."

The plaintiff manufactures machines for producing prints by stencil process, and supplies for the machines. The machines are

sold practically at cost—its profits are mainly derived from supplies. The court reports tell of a number of attempts to take advantage of the demand for such supplies.

The defense of the suit at bar is conducted by Arlac Dry Stencil Company, Inc., the distributor of stencil sheets sold by the defendant herein. These stencil sheets are specially punched to fit only the plaintiff's machines, and are of the characteristic blue color of plaintiff's stencil sheets. Defendants' sheets are made in Germany by cheaper labor.

The defense basically rests upon the contention that the plaintiff invented nothing—that the world already had it.

The answer sets up the prior art, reference being made to upwards of seventy patents, and two alleged prior uses. There is some suggestion of attack on the wording of the claims and the disclosure, which the court deems to be without sufficient justification.

■ In approaching the subject, it is necessary to study a somewhat voluminous literature of the art, and to determine whether the invention has real merit and marks a substantial advance. A comprehensive view of the progress of the art from 1874 to 1912 is found in A. B. Dick Co. v. Underwood Typewriter Co. (D. C.) 246 F. 309–311, affirmed (C. C. A.) 252 F. 990. See also A. B. Dick Co. v. Barnett (C. C. A.) 288 F. 799.

The earlier wax stencil sheet was largely superseded in 1912 by a gelatin stencil sheet known to the trade as "Dermatype." The advance in 1924 from the gelatin sheet is claimed by the present patent, under which the plaintiff manufactures what is known as the "Mimeotype."

The consuming public required a sheet that could be readily converted into a stencil by typewriter or stylus, that would reproduce accurately and give exact duplicates of loop letters, o, a, e, etc. The sheet must be delicate to be opened up when impinged by the typewriter, and yet it must be tough enough to endure handling and the making of thousands of copies. It must resist the passage of ink, except where the characters are stenciled. It must withstand temperature changes and be readily transported, and particularly it must remain stencilizable for a considerable period, i. e., between manufacture and use.

The Dermatype of 1912 met most of these requirements, and was tough enough to withstand usage. It had one serious drawback. The record is quite conclusive that a long time—probably over a year—elapses between the application of the gelatin coat to the Yoshimo paper base at the factory and the use by the consumer. The Dermatype soon hardened and became brittle, and was not stencilizable without moistening. This moistening required care, and even then imperfect copies were not unusual, and injury to the typewriter occurred from moisture.

The marked advance in the art is apparent in the plaintiff's invention. The Mimeotype remains stencilizable for more than a year after manufacture without moistening, and replacements required for pin holes are largely avoided. All of the advantages of the Dermatype are retained and its deficiencies are eliminated.

The advance is by the use of a characteristically different material. The paper base is coated with a solution of "cellulose ester in a suitable solvent." The patent says: "The material which I prefer to employ and with which excellent results may be obtained is known as 'pyroxylin enamel,'" etc.

After reference to the consistency of the enamel and the controlling elements, the patent goes on to say that a suitable proportion "of a tempering agent such as an oil" is added. Castor oil is preferred in the proportion of 50 per cent. The chief function of the tempering agent is to prevent the pyroxylin enamel from drying too hard or becoming too brittle. The addition of a fatty ingredient acts as a preservative of the proper consistency of the finished coating and tends to decrease its stickiness. The patent further specifies with elaboration the various portions of ingredients, so that one experienced in the art could make the required stencil sheets.

As to the claims, I believe they clearly define the invention—a practical stencil, differing from all prior sheets.

Nitrocellulose has been known for many years, but the art did not know the nitrocellulose sheet which requires no moistening. This is invention. The literature treating of nitrocellulose in combination with other ingredients is most extensive. But it remained for this inventor, with the available means and the desired end, to bring about the successful result. It had escaped the imagination of others.

■ Suggestion is not invention. Accomplishment is the milepost of progress. I am of the opinion that the record discloses that the product sold by the defendants, known as "Duroderma," infringes substantially the claims of plaintiff's patent.

As to the great number of patents cited by the defendant, a careful study indicates that some element is lacking in all of them, which plaintiff's successful patent possesses. ■ The defendants presented Father Cal-

houn, a teacher of chemistry, who told of his studying and experimenting with the making of stencils from the year 1904 until the present time. He tells of making and using stencils in making notes for use in classes. The use of the stencils was known to others, but their composition was his personal secret, kept "closely from the public," and unavailable to any one else. There is no physical record remaining, and while the integrity of purpose of the witness may not be questioned, the court cannot conclude that such devices have been proven satisfactorily and beyond a reasonable doubt to be anticipatory of plaintiff's invention. The invention relied upon as a defense must be complete and capable of producing the result. Electrical Engineers' Equipment Co. v. Champion Switch Co. (C. C. A.) 23 F.(2d) 600.

█ There certainly is no evidence that the experimental stencil sheets could be stencilized long after manufacture without moistening. or were operable long enough for practical commercial use. The defense fails. Probability—even extreme probability—is not enough, and anticipation cannot be predicated upon anything less than satisfactory proof.

The plaintiff's patent is held valid and infringed. Decree accordingly.