## A. B. DICK CO. v. ARLAC DRY STENCIL CORPORATION et al.

### No. 2359.

District Court, W. D. Pennsylvania.

May 5, 1930

Byrnes, Stebbins, Parmelee & Blenko, of Pittsburgh, Pa., and Archibald Cox, of New York City, for plaintiff.

Brown & Critchlow, of Pittsburgh, Pa., for defendant.

McVICAR, District Judge.

This suit is for infringement of patent No. 1,526,982 for improvement in stencil sheets. The defense is invalidity and noninfringement. The court finds the following facts and conclusions of law:

## Findings of Fact.

(1) The plaintiff is a corporation of the state of Illinois, having its principal office in the city of Chicago.

(2) The Arlac Dry Stencil Corporation, defendant, is a corporation of the state of Delaware, having a regular and established place of business in the city of Pittsburgh, Allegheny county, in the Western district of Pennsylvania. The defendant Verne R. Shattuck is a citizen, resident, and inhabitant of the Western district of Pennsylvania.

(3) On April 7, 1922, Edward W. Hill, an employee of the plaintiff corporation, made application to the Commissioner of Patents of the United States for a patent for improvement in stencil sheets. The invention was assigned to plaintiff, to whom a patent was issued February 17, 1925, No. 1,526,982.

(4) A stencil sheet is a sheet adapted to be converted into a stencil for multiplying copies with less equipment than by printing, particularly in machines which position the paper and stencil and apply ink, so that it passes through the apertures in the stencil and reaches the paper.

(5) The prior art is stated in the application for the patent in suit as follows:

"Originally stencil-sheets adapted for the reduplication of typewritten matter were produced by coating an open-texture, porous base with soft wax. With sheets so made, only a limited number of copies could be produced. In addition, the sheets were fragile, easily injured and affected by changes of temperature. To a great extent such sheets were later superseded by so-called 'indestructible' stencil-sheets, in which a base of open-texture, porous material was coated with coagulated protein, as for example, gelatin combined with a tempering agent, such as sugar or glycerin, and treated with a suitable coagulant, such as potassium dichromate, formaldehyde, etc. If stencil-sheets of this character, which are now in extensive use, are stencilized a substantial period after the coating of the base, they will be too brittle and it is necessary to temporarily soften the coating material by the application of moisture."

(6) The object of the invention as stated in the application for the patent is:

"The object of the present invention is to produce a stencil-sheet which shall improve upon the existing art in divers respects, chiefly, however, in dispensing with the necessity for temporary moistening of the stencil-sheet during the stencilizing operation. To attain this end, I have devised a coating or impregnating material characteristically different from anything which has heretofore been developed and which, when applied to the foundation sheet, results in a stencil-sheet which is at all times ready for use by inserting the same in a writing machine and typing thereon."

(7) The specification in the patent is substantially as follows:

"In carrying out the invention, I employ a base of open-texture, porous material of any suitable character, such, for example, as the Japanese bibulous paper commonly known as 'Yoshino.' This I coat or impregnate with a cellulose ester, such as cellulose nitrate or cellulose acetate, by treating the paper with a solution of such cellulose ester in a suitable solvent. The material which I prefer to employ and with which excellent results may be obtained is known as 'pyroxylin enamel,' this being a solution of nitrated cellulose in a suitable solvent, with which has been incorporated a pigment such as zinc oxide. As commercially available at the present time, this enamel has the consistency, approximately, of ordinary molasses. As is well known, the consistency of pyroxylin enamel is governed by the relation between the solid constituents (such as cellulose nitrate, zinc oxide etc.) and the solvent employed (such as amylacetate).

"To a given quantity of this pyroxylin enamel I add a suitable proportion (fifty per centum will give good results) of a tempering agent such as an oil, mixing this thoroughly with the enamel and, if desired, adding coloring matter such as a dye or carbon black which may have been previously dissolved or suspended in amylacetate. The chief function of the tempering agent is to prevent the pyroxylin enamel from drying too hard, making the coating undesirably brittle. For this purpose I prefer to use castor oil or a similar oil having the power of forming with the cellulose ester and its solvent a homogeneous body. I may also, if desired, add a suitable quantity of a material, for example soya bean oil, of such character as to hasten the setting of the coating mixture when applied. The quantum to be used can readily be determined with reference to the particular pyroxylin employed. I prefer to use only enough to aid in the setting of the mixture without making it undesirably moist and sticky.

"I have found it advantageous also to

add to the mixture a limited proportion, say five to ten per centum, by weight, of some fatty or tallow-like ingredient of either animal or vegetable origin (lard, cottolene, Chinese vegetable tallow, etc.) to serve similarly as a setting agent, but more particularly as a preservative of the proper consistency of the finished coating and to aid also in retaining the composition in the desired state of softness, fluency and displaceability."

(8) The patent contains twenty-two claims of invention. Some of the claims specify oil as a tempering agent, others vegetable oil, others castor oil and others do not specify the ingredient of the tempering agent, such as claim 2, which reads:

"A stencil-sheet adapted for conversion into a stencil by the impact of type and the like thereon, the same comprising a base having a type-impressible coating including a cellulose compound and a tempering agent."

(9) Cellulose is the chief material composing the walls of plant cells, and is perhaps best exemplified by cotton fiber. Cellulose esters are compounds of cellulose produced by the interaction of an acid with the cellulose; nitrocellulose is a compound of cellulose produced by the action of nitric acid, and acetyl cellulose by acetic acid. Cellulose compounds in general possess a considerable degree of hardness and toughness, and, unlike gelatin, a resistance to water.

(10) Pyroxylin is the name for part of the general class of cellulose nitrates that applies to the lower nitrates, that are apt to be more soluble and more plastic, and less explosive and less dangerous, than the higher nitrates.

(11) In 1925, the plaintiff brought suit against the Simplicator Corporation and Martin S. Hebert, in the United States District Court for the Southern District of New York, for the infringement of the patent in suit. See 30 F.(2d) 713. The issue therein was the validity and infringement of each of the claims of the patent in suit. On February 21, 1930, said court entered its final decree, which reads:

"It is ordered, adjudged and decreed,

"1. That United States Letters Patent No. 1,526,982, for Stencil Sheet, granted February 17, 1925, to the plaintiff, A. B. Dick Company, as assignee of Edward W. Hill, are good and valid in law as to claims 2, 3, 4, 6, 7, 8, 9, 11, 12, 13, 14, 16, 18, 21 and 22 thereof.

"2. That the plaintiff, A. B. Dick Company, is and has been since the grant of said Letters Patent possessed of the full and entire right, title and interest in and to the same.

"3. That the defendants, Simplicator Corporation and Martin S. Hebert, have infringed upon said Letters Patent and upon plaintiff's rights thereunder by selling and causing to be sold stencil sheets containing and employing the invention covered by said Letters Patent and set forth in and by all the said claims thereof.

"4. That the defense of this suit has been conducted by Arlac Dry Stencil Co., Inc., and Arlac Dry Stencil Corporation, corporations of the State of Delaware, successively the national distributor of said stencil sheets sold by the defendant Simplicator Corporation, which have been imported by said Arlac Dry Stencil Co., Inc., and Arlac Dry Stencil Corporation from Germany.

"5. That a perpetual injunction be issued herein against said defendants, Simplicator Corporation and Martin S. Hebert, their agents, servants, employees and attorneys, and each and every one of them, enjoining and restraining them from directly or indirectly making, using or selling any stencil sheet containing or employing the invention set forth in said Letters Patent No. 1,526,982 and the claims 2, 3, 4, 6, 7, 8, 9, 11, 12, 13, 14, 16, 18, 21 and 22 thereof; and from in any way further infringing upon said claims of said Letters Patent, or any thereof; or upon the rights of the plaintiff thereunder.

"6. That the bill as to Claims 1, 5, 10, 15, 17, 19 and 20, be and the same hereby is dismissed, not on the merits, but only on the ground that a decree as to them would be moot.

"7. That the plaintiff recover of the defendants Simplicator Corporation and Martin S. Hebert, its costs herein to be taxed."

(12) The defense of said suit was conducted by the Arlac Dry Stencil Corporation, one of the defendants in this case, who is the national distributor of the stencil sheets sold by the Simplicator Corporation, which are imported from Germany.

(13) The Arlac Dry Stencil Corporation, defendant, at the time of filing its answer and since, has sold stencil sheets adapted for conversion into a stencil by the impact of type thereon and comprised a base of Yoshino and a coating. The coating of said

stencil sheets included nitrocellulose which is a cellulose ester and a cellulose compound. The said coating also includes an ingredient to prevent the nitrocellulose from drying too hard, making the coating undesirably brittle. The said coating includes nitrocellulose and a material bought in Germany as "olein," which is like the material commonly known here as commercial red oil, and consists of oleic acid with sundry impurities. The amount of nitrocellulose is about 9 per cent.; the oleic acid about 80 per cent.; the balance being the Yoshino and other substances.

(14) Oleic acid is physically an oil. In proper quantity it forms with nitrocellulose and its solvents a homogeneous body which is ink-resisting and stencilizable without moistening.

(15) The "olein," red oil or oleic acid, such as is included in defendants' stencil sheet coating, in the quantity there used, when introduced into a solution of nitrocellulose, like castor oil in this respect, prevents the nitrocellulose from drying too hard, making the coating undesirably brittle, and both softens and keeps it soft and type-impressible.

(16) The olein used in defendants' stencil sheets and commercial red oil contain impurities of various kinds, such as stearic acid, unsaponified tallow or grease; and some of these impurities in the "olein" used in defendants' stencil sheets, alone or by combining with the other substances present, may have produced the materials other than the nitrocellulose and oleic acid found in the analysis of defendants' stencil sheets.

(17) Oleic acid, commonly known as red oil, is a tempering agent in nitrocellulose compounds, and it performs substantially the same function therein as castor oil. It is a substitute or equivalent therefor, and was known and used as a tempering agent prior to the Hill invention.

(18) Verne R. Shattuck, the individual defendant, owns virtually all the stock of the defendant corporation, which he created and of which he is the president. He has managed and now manages its affairs; he receives a salary therefrom. He took an active part in the conduct of the case in the United States court for the Southern district of New York.

### Conclusions of Law.

(1) Defendants are concluded and estopped by all that was at issue and decided in the suit of A. B. Dick Co. v. Simplicator Corporation et al., 30 F.(2d) 713, in the United States District Court for the Southern District of New York.

(2) Defendants are estopped from denying the validity of all of the claims of the patent in suit excepting claims 1, 5, 10, 15, 17, 19, and 20.

(3) Defendants are estopped from denying the invention in all of the claims of the patent in suit excepting claims 1, 5, 10, 15, 17, 19, and 20.

(4) Claims 2, 3, 4, 6, 7, 8, 9, 11, 12, 13, 14, 16, 18, 21, and 22 of the patent in suit are valid.

(5) Claims 2, 3, 4, 6, 7, 8, 9, 11, 12, 13, 14, 16, 18, 21, and 22 of the patent in suit were infringed by the defendants.

(6) Plaintiff is entitled to a decree permanently restraining the defendants from infringing the patent in suit and for an accounting.

### Opinion.

The decree in the case of A. B. Dick Co. v. Simplicator Corporation et al. (D. C.) 30 F.(2d) 713, is conclusive against the Arlac Dry Stencil Corporation, defendant, for the reason that it participated in and conducted said suit. In Gilchrist Co. v. Erie Specialty Co., 231 F. 659, 663 (C. C. A. 3d Cir.), the court stated:

"The subject-matter of the Pennsylvania suit having been contested in the New York suit, both parties to the present suit having contributed to carrying on the prior suit and having openly participated therein, the final decree in that case became, as between the said parties, res adjudicata. It is to the interest of the republic that litigation should end, and the court below was right in holding that the parties to the New York suit could not relitigate the question of patent priority in the Pennsylvania case. 'The doctrine is well settled,' said Judge Lurton in Penfield v. Potts, 126 F. 475, 61 C. C. A. 371, 'that one who for his own interest joins in the defense of a suit to which he is not a party of record is as much concluded by the judgment as if he had been a party thereto, provided his conduct in that respect was open and avowed, or otherwise well known to the opposite party.' "

The decree in the New York case is conclusive on Verne R. Shattuck, the individual defendant, for the reason that he is virtually the owner of all the stock of the defendant corporation which was created by Shattuck, and of which corporation he is the pres-

ident and the manager of its affairs. He also took an active part in the conduct of the case aforesaid. In Hart Steel Co. v. Railroad Supply Co., 244 U. S. 294, 37 S. Ct. 506, 507, 61 L. Ed. 1148, it was held under analogous circumstances that the doctrine of res judicata applied as against such a defendant, the court saying:

"There can be no doubt from the record before us that the Elyria Company owned all of the capital stock of the Hart Company, that the latter company was a mere sales agent of the former, that Wood was the salaried manager of the latter, that both the Hart Company and Wood were agents, subject to the control of the Elyria Company, and that in selling the tie plates and as defendants in the litigation they acted wholly under the authority and in the interest of their principal. Identity of interest could not be clearer or closer than it was between the defendants in the two cases,—they represented precisely the same, single interest, and the Hart Company and Wood, as agents of the Elyria Company, were obviously and necessarily privies to the judgment rendered in its favor in the Circuit Court of Appeals for the Sixth Circuit. * * *

"This doctrine of res judicata is not a mere matter of practice or procedure inherited from a more technical time than ours. It is a rule of fundamental and substantial justice, 'of public policy and of private peace,' which should be cordially regarded and enforced by the courts to the end that rights once established by the final judgment of a court of competent jurisdiction shall be recognized by those who are bound by it in every way, wherever the judgment is entitled to respect."

The decree in the New York case is conclusive of all that was at issue and decided therein. In the case of Lander v. Mercantile Bank, 186 U. S. 458, 22 S. Ct. 908, 915, 46 L. Ed. 1247, the Supreme Court in determining what was res judicata held that the answer depended upon the "thing adjudged," and stated the rule as to how the thing adjudged was to be determined, as follows:

"The answer to the question is found in the pleadings in those cases and in the judgments which were entered."

In Bemis Car Box Co. v. J. G. Brill Co., 200 F. 749, 751, (C. C. A. 3d Cir.), the court stated:

"An examination of the record of the recited litigation in the First Circuit shows that the validity of the first claim of the Bemis patent was then in issue, and that such litigation resulted in a decree adjudging the title of the patent was in the complainant, that said patent, so far as the first claim thereof was concerned, was valid, and that it was infringed by the particular device of the Brill Company involved in that cause. On well-established principles it is clear that all the questions involved in that issue were, as between the parties to such litigation, merged and concluded in the final decree therein entered. The validity of the claim, therefore became res adjudicata, and could not be called in question in any subsequent litigation between the parties."

In the New York case, the validity and infringement of the claims of the patent in suit were at issue. That court decided that all claims were valid excepting claims 1, 5, 10, 15, 17, 19, and 20 not passed upon; that the invention in each of said claims was infringed and the defendants were restrained from violating the invention contained therein, which included claims such as 2 and 18, which call for a tempering agent but do not specify the ingredient thereof. The claims of the patent other than those not passed upon were held infringed by a stencil sheet containing a tempering agent of castor oil. A. B. Dick Co. v. Simplicator Corporation et al., 34 F.(2d) 935 (C. C. A. 2d Cir.).

If such claims were infringed by a tempering agent of castor oil, it follows that they were infringed by a tempering agent of oleic acid, otherwise red oil, which performs the same function. The New York case, until reversed, is res judicata that the invention set forth in said claims is valid.

Similar rulings were made by the United States District Court for the Southern District of New York by two different judges in the cases of A. B. Dick Co. v. Shallcross Co., Inc., 59 F.(2d) 780, and A. B. Dick Co. v. James Marr, Doing Business as Marr Duplicator Co., 59 F.(2d) 781.

Irrespective of the law of res judicata, defendants' stencil sheets infringed those claims of the patent in suit which specify castor or other like oil as a tempering agent for the reason that oleic acid, commonly known as red oil, is a tempering agent in nitrocellulose compounds and it performs substantially the same function therein as castor oil. It also was a substitute or equivalent known and used as a tempering agent prior to the invention of the patent in suit.

Let a decree be prepared and presented in accordance with the findings of fact, conclusions of law, and this opinion.