SAN FRANCISCO NATIONAL BANK *v.* DODGE.

APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE NINTH CIRCUIT.

No. 44.   Argued November 7, 1904.—Decided February 27, 1905.

Section 5219, Rev. Stat., authorizes the taxation by the States of shares of stock of national banks but exacts that the tax when levied shall be at no greater rate than that imposed on other moneyed capital; no conflict necessarily arises between the Federal statute and a state law solely because the latter provides one method for taxation of state banks and another method for national banks if there is no actual discrimination against the shares of the national banks resulting from the difference in method.   If, however, irrespective of the face of the law, the system created by the state law in its practical execution produces an actual

and material discrimination against national banks it does conflict with § 5219, Rev. Stat., and is void.

Where the record contains an express admission that a specified instance of taxation showing an undervaluation of the property of a corporation is illustrative of the method by which all other similar institutions are assessed under a statute requiring full valuation, this court cannot disregard the admission and consider that such undervaluation is an isolated instance and that all the property of other similar institutions is assessed at full value in accordance with the provisions of the statute.

As it appears from the agreed statement of facts in this case that under the laws of California, as construed by the highest court of that State, all the elements of value which are embraced in the assessment of shares of stock in national banks are not included in assessing the value of property of state banks and other moneyed corporations, there is a discrimination against the shares of national banks and the state law taxing such shares as so construed violates, and is void under, § 5219, Rev. Stat.

THE facts are stated in the opinion.

*Mr. W. S. Wood,* with whom *Mr. E. S. Pillsbury* and *Mr. Alfred Sutro* were on the brief, for appellant.

As to constitutional scope of taxation, see *McCulloch* v. *Maryland,* 4 Wheat. 316, 429; § 3, Art. I; § 1, Art. XIII, Const. of California. Property exempt under the laws of the United States is exempt under the state laws; the exemption is obligatory. *Pollock* v. *Farmers' L. & T. Co,* 157. U. S. 429.

National banks are not subject to state taxation. The franchise to be a national bank is not subject to state taxation. *Bank* v. *Owensboro,* 173 U. S. 671; *National Bank* v. *Louisville,* 174 U. S. 438.

The shares may be taxed but only under the provisions of Rev. Stat. § 5219. This is the measure of the power of the State to tax national banks. *First National Bank* v. *San Francisco,* 129 California, 97.

The authority thus given is to tax, not the banks, but the shareholders; and the authority to tax shareholders is upon the express limitations thus declared by Congress.

Whenever, therefore, state legislation assumes to tax shareholders of national banks at a greater rate than other moneyed

capital in the hands of individual citizens of such State, such· legislation is unconstitutional and void. *People* v. *Weaver*, 100 U. S. 539; *Pelton* v. *National Bank*, 101 U. S. 146; *Evansville Bank* v. *Britton*, 105 U. S. 322; *McHenry* v. *Downer*, 116 California, 25; *Miller* v. *Heilbron*, 58 California, 133.

As to California legislation authorizing taxation of shares in national bank, see *McHenry* v. *Downer*, 116 California, 25; Stat. March 14, 1899, p. 96; and also see exemptions under § 3608, Political Code.

The constitutionality of this statute as .to the exemption of shares in.state corporations was affirmed in· *Burke* v. *Badlam*, 57 California, 594; *San Francisco* v. *Mackay*, 10 Sawyer, 302; *County Commissioners* v. *Farmers' & Mechanics' Bank*, 48 Maryland, 117; *Germania Trust Co.* v. *San Francisco*, 128 California, 594, and the decisions of the Supreme Court of the State, construing its constitution and statutes, are binding upon the Federal courts. This creates a discrimination against shares of national banks.

Under § 3609 shares in national banks are valued and assessed as other property for taxation. *Supervisors* v. *Stanley*, 105 U. S. 311; *Evansville Bank* v. *Britton*, 105 U. S. 324. The rule of valuation applicable to the property of the stockholder in a state corporation, or in a state bank, is not the equivalent of the rule made applicable to stockholders in national banking associations. *Miller* v. *Heilbron*, 58 California, 133; *McHenry* v. *Downer*, 116 California, 20, and the amendment of 1899 does not cure it. Par. 6, § 3629, Pol. Code, has not been amended as to exemptions to which banks · and stockholders are entitled and which are not available under this statute; see *Dutton* v. *Bank*, 53 Kansas, 440, 463; *First Nat. Bank* v. *Ayres*, 160 U. S. 660; *Aberdeen Bank* v. *Chehalis County*, 166 U. S. 440; *Palmer* v. *McMahon*, 133 U. S. 660; *Bank of Commerce* v. *New York*, 2 Black, 620, 628; *Bradley* v. *People*, 4 Wall. 458; *Hills* v *Exchange Bank*, 105 U. S. 327; *Whitbeck* v. *Mercantile Bank*, 127 U. S. 199; *McMahon* v. *Palmer*, 102 N. Y. 176; *S. C.*, 12 Daly, 364; *Na-*

*tional Bank* v. *Chapman,* 173 U. S. 205. In matters of taxation the statute must be adhered to. *Merced County* v. *Helm,* 102 California, 159, 165.

As to *Bank of California* v. *State,* 142 California, 276, this court may accept the refusal but is not bound by the reasoning, and see *Hart* v. *Burnett,* 15 California, 530, 599; *Cohens* v. *Virginia,* 6 Wheat. 399. As to methods of valuing franchises of state corporations, see *Water Works* v. *Schottler,* 62 California, 69, 117; *San José Gas Co.* v. *January,* 57 California, 614; *San Francisco* v. *Anderson,* 103 California, 70; *Germania Trust Co.* v. *San Francisco,* 128 California, 595; *People* v. *National Bank,* 123 California, 53, 60; *San Francisco* v. *Fry,* 63 California, 470.

*Mr. William I. Brobeck,* with whom *Mr. Percy V. Long* was on the brief, for appellee:

The act of March 14, 1899, is constitutional and is not violative of § 5219, Rev. Stat., as to extent of power of taxation. See *State Tax on Foreign Held Bonds,* 15 Wall. 334; *Kirtland* v. *Hotchkiss,* 100 U. S. 491; *Mackay* v. *San Francisco,* 113 California, 392. An assessment will not be declared void for inequality of valuation unless a preconcerted plan of discrimination is disclosed. *Stanley* v. *Supervisors,* 121 U. S. 550; *Supervisors* v. *Stanley,* 105 U. S. 305; *Bank* v. *Kimball,* 103 U. S. 732; *Bank* v. *Perea,* 147 U. S. 67.

As to construction of "other moneyed capital" see *National Bank* v. *Mayor,* 100 Fed. Rep. 29; *Mercantile Bank* v. *New York,* 121 U. S. 154; *Evansville Bank* v. *Britton,* 105 U. S. 322; *National Bank* v. *Chehalis,* 166 U. S. 440. The bank in this case has had the benefit of all possible deductions. *Van Allen* v. *Assessors,* 3 Wall. 573; *Bradley* v. *People,* 4 Wall. 459; *People* v. *Commissioners,* 4 Wall. 244.

There is no discrimination against national banks on the face of the statute. *Davenport Bank* v. *Davenport,* 123 U. S. 83. As to what deductions should be allowed to holders of bank stock and how values should be estimated see cases cited

by appellant and *Bressler* v. *Wayne*, 32 Nebraska, 834; *Chapman* v. *Bank*, 56 Ohio St. 310.

The general rule is that a share of stock is a right to a proportionate part in the dividends and profits of the corporation and to a share of its net assets upon dissolution. *Plumpton* v. *Bigelow*, 93 N. Y. 599; *Field* v. *Pierce*, 102 Massachusetts, 261; *Jones* v. *Davis*, 35 Ohio St. 477; *Tax Collector* v. *Insurance Co.*, 42 La. Ann. 1172; *Farrington* v. *Tennessee*, 95 U. S. 687; *People* v. *Bank*, 123 California, 60.

No solvent credits escape assessment under the constitution and laws of California. Section 1, Art. XIII, of constitution; §§ 3607, 3617, Pol. Code; *People* v. *Hibernia Bank*, 51 California, 247.

The exemption of shares of state banks does not discriminate against national banks. Cases cited by appellant, and see *Stanford* v. *San Francisco*, 131 California, 34; *Ottawa Glass Co.* v. *McCalet*, 81 Illinois, 556; *Nevada National Bank* v. *Dodge*, 119 Fed. Rep. 57. The courts of California have construed the statute as taxing shares of stock only once and while there are two lines of decisions the only decisions involved in this case are those of the California courts whose construction of the statute of the State will be followed by this court. The California decisions are supported by *Rice* v. *National Bank*, 23 Minnesota, 280; *Commissioner's* v. *National Bank*, 48 Maryland, 117; *Lackawanna* v. *National Bank*, 94 Pa. St. 221; *Rosenberg* v. *Texas*, 67 Texas, 578; *Gordon* v. *Mayor &c.*, 5 Till. 231; *Blythe* v. *Brannin*, 3 Zabr. 484; *Johnson* v. *Commonwealth*, 7 Dana, 342; *Tax Cases*, 12 G. & Johns. 117; *Smith* v. *Burley*, 9 N. H. 423; *Williams* v. *Weaver*, 75 N. Y. 31; *New Haven* v. *Bank*, 31 Connecticut, 106.

It is evident both by the statutes and decisions of this State, that the system of taxation on its face works no discrimination against the national bank shareholders, and that it was the thought and intent of the legislature that the taxation of the property and the taxation of the shares was one and the same.

The purpose of this method of taxation was to avoid what the Supreme Court of the State had declared to be double taxation    *Nevada National Bank* v. *Dodge*, 119 Fed. Rep. 57; *Hepburn* v. *School Directors*, 23 Wall. 480.

Where a statute is fairly susceptible of two constructions —one leading inevitably to mischief or absurdity, and the other consistent with justice, sound sense and wise policy— the former should be rejected and the latter adopted.    *In re Mitchell*, 120 California, 384, 386; *Jacobs* v. *Supervisors*, 100 California, 127; Sedgwick on Stat. and Const. Law, 312.

MR. JUSTICE WHITE delivered the opinion of the court.

The appellant bank sued to restrain the enforcement of state, county, and city taxes, levied for the year 1900, upon shares of stock of the bank.    Adequate averments were made to show equitable jurisdiction.    *Cummings* v. *National Bank*, 101 U. S. 153, 157; *Hills* v. *Exchange Bank*, 105 U. S. 319; *Lander* v. *Mercantile Bank*, 186 U. S. 458.    The taxes were alleged to be in conflict with the law of the United States. Rev. Stat. § 5219.

The case was submitted upon the pleadings and an agreed statement of facts.    A decree of dismissal was affirmed by the Circuit Court of Appeals for the Ninth Circuit.    That court deemed that the cause was controlled by the reasoning of an opinion delivered in deciding a previous case, *Nevada National Bank* v. *Dodge, Assessor*, the opinion in which case is reported in 119 Fed. Rep. 57.

Before considering the contentions relied on we quote the text of the constitution of California directly relating to the subject in hand, and briefly advert to the legislation of that State which preceded the act under which the assailed tax was levied.

Section 1 of Article XIII of the constitution of California provides:

"All property in the State, not exempt under the laws of the United States, shall be taxed in proportion to its value,

to be ascertained as provided by law. The word 'property,' as used in this article and section, is hereby declared to include moneys, credits, bonds, stocks, dues, franchises and all other matters and things, real, personal and mixed, capable of private ownership. The legislature may provide, except in the case of credits secured by mortgage or trust deed, for a reduction from credits of debts due to *bona fide* residents of this State."

Carrying out the command to provide for the ascertainment of the value of property to be taxed, it was enacted, Political Code, § 3627, that all taxable property shall be assessed "at its full cash value," and, Political Code, § 3617, that "the terms 'value' and 'full cash value' mean the amount at which the property would be taken in payment of a just debt due from a solvent debtor."

Prior to 1881 shares of stock of all corporations were taxed, and section 3640 of the Political Code commanded that the market value of the stock of a corporation should be taken as the value of the shares for assessment. Where the shares of stock were taxed no tax was levied upon the corporate property. This was because the Supreme Court of California had decided that to tax both the stock and the corporate property would be double taxation. *Burke* v. *Badlam*, 57 California, 594.

In the year 1881 the general system of taxing shares of stock was abandoned, and a rule was put in force taxing the corporate property. Section 3608 of the Political Code, which embodied this change, was as follows:

"Shares of stock in corporations possess no intrinsic value over and above the actual value of the property of the corporation which they stand for and represent; and the assessment and taxation of such shares, and also of the corporate property, would be double taxation. Therefore, all property belonging to corporations shall be assessed and taxed, but no assessment shall be made of shares of stock; nor shall any holder thereof be taxed therefor."

The act of 1899, under which the tax in this case was levied, amended the section just quoted, by providing that all property belonging to corporations shall be assessed and taxed "save and except the property of national banking associations, not assessable by Federal statute;" and by adding to the provision commanding that no assessment shall be made of shares of stock in any corporation the following words: "Save and except in national banking associations, whose property, other than real estate, is exempt from assessment by Federal statute." To carry out the change made by the provision just referred to, two sections were added to the Political Code, viz., 3609 and 3610. Section 3608, as amended by the act of 1899, and the two new sections resulting from that act, are in the margin.[1]

---

[1] Sec. 3608. Shares of stock in corporations possess no intrinsic value over and above the actual value of the property of the corporation which they stand for and represent; and the assessment and taxation of such shares, and also all the corporate property, would be double taxation. Therefore, all property belonging to corporations, save and except the property of national banking associations, not assessable by Federal statute, shall be assessed and taxed. But no assessment shall be made of shares of stock in any corporation, save and except in national banking associations, whose property, other than real estate, is exempt from assessment by Federal statute.

Sec. 3609. The stockholders in every national banking association doing business in this State, and having its principal place of business located in this State, shall be assessed and taxed on the value of their shares of stock therein; and said shares shall be valued and assessed as is other property for taxation, and shall be included in the valuation of the personal property of such stockholders in the assessment of the taxes at the place, city, town, and county where such national banking association is located, and not elsewhere, whether the said stockholders reside in said place, city, town, or county, or not; but in the assessment of such shares each stockholder shall be allowed all the deductions permitted by law to the holders of moneyed capital in the form of solvent credits, in the same manner as such deductions are allowed by the provision of paragraph six of section thirty-six hundred and twenty-nine of the Political Code of the State of California. In making such assessment to each stockholder there shall be deducted from the value of his shares of stock such sum as is in the same proportion to such value as the total value of its real estate and property exempt by law from taxation bears to the whole value of all the shares of capital stock in said

The first contention is that the law of 1899 is on its face in conflict with section 5219 of the Revised Statutes, because it taxes shares of stock in national banks and does not tax such shares in state banks and other state moneyed corporations. As it is patent that the state banks and corporations are taxed on. their property, the proposition reduces itself to this: That the States may· not pursue the method permitted. by the act of Congress of taxing shares of stock in national banks· unless the same method is employed as to the stock of state banks and · other state moneyed corporations.

In *Davenport Bank* v. *Davenport*, 123 U. S. 83, it was de-cided that the provision of section 5219 of the Revised Stat-utes, authorizing the taxation of shares of stock in national banks, but exacting that the tax when levied should be at no greater rate than that imposed on other moneyed capital, did not require the States, in taxing their own corporations, "to conform to the system of taxing the national banks upon the shares of their stock in the hands of their owners."·

True it is in the *Davenport case* it was also decided that the prohibition in the act of Congress of a higher rate of taxation of shares of stock in national banks than on other moneyed capital operated to avoid any method of assessment or taxa-

---

national bank. And nothing herein shall be construed to exempt the real estate of such national bank from taxation. And the assessment and taxa-tion of such shares of stock in said national banking associations shall not be at a greater rate than is made or assessed upon other moneyed capital in the hands of individual citizens of this State.

SEC. 3610. The assessor charged by law with the assessment of said shares shall, within ten days after he has made such assessment, give written notice to each national banking association of such assessment of the shares of its respective shareholders; and no personal or other notice to such shareholder of such assessment shall be necessary for the purpose of this act. And in case the tax on any such stock is unsecured by real estate owned by the holder of such stock, then the bank in which said stock is held shall become liable therefor; and the assessor shall collect the same from said bank, which may then charge the amount of the tax so collected to the account of the stockholder owning such stock, and shall have a lien, prior to all other liens, on his said stock, and the dividends and earnings thereof, for the reimburse-ment to it of such taxes so paid.

tion, the usual or probable effect of which would be to discriminate in favor of state banks and against national banks. True also is it that in the same case it was held that, even where no such discrimination seemingly arose on the face of the statute, nevertheless, if from the record it appeared that the system created by the State in its practical execution produced an actual and material discrimination against national banks, it would be the duty of the court to hold the state statute to be in conflict with the act of Congress, and therefore void.

As, then, no conflict necessarily arises between the act of Congress and the state law, solely because the latter provides one method for taxation of state banks and other moneyed corporations and another method for national banks, it follows that the contention that the state law for that reason is repugnant to the act of Congress is without merit. And this brings us to consider the contention of the appellant, which we think was embraced in the pleadings, which was expressly covered by the stipulated facts, the overruling of which was assigned as error in the Circuit Court of Appeals and in this court, and was elaborately discussed by both parties in the argument at bar, viz., that irrespective of the face of the state law, that law is void because of a discrimination against national banks, within the principles settled in the *Davenport case.*

To determine this latter contention requires an analysis of the two systems which the law of California enforces, in order that the two may be accurately compared.

Under the law the shares of national banks must be valued at their "full cash value," which the statute defines to mean the amount at which they "would be taken for a just debt due from a solvent debtor." These words are but synonymous with the requirement that in assessing shares of stock their market value must be the criterion. This is the case, for, eliminating exceptional and extraordinary conditions, giving an abnormal value for the moment to stock, it is apparent that

the general market value of stock is its true cash and selling value. That such is the meaning of the words in the legislation of California is indisputable, in view of the provision of section 3640 of the Political Code, which made market value the rule for assessing shares of stock during the period when the taxation of shares of stock generally prevailed, and that such requirement was mandatory was in effect held by the Supreme Court of California. *Miller* v. *Heilbron*, 58 California, 133, 138.

What, then, was embraced in the assessment of the shares of stock at their full cash or selling or market value? It embraced not only the book value of all the assets of the corporation, but the good will, the dividend-earning power, the ability with which the corporate affairs were managed, the confidence reposed in the capacity and permanency of tenure of the officers, and all those other indirect and intangible increments of value which enter into the estimate of the worth of stock and help to fix the market value or selling price of the shares. Considering this subject in *Adams Express Company* v. *Ohio*, 166 U. S. 185, 221, the court said:

"The capital stock of a corporation and the shares of a joint-stock company represent not only tangible property, but also the intangible, including therein all corporate franchises and all contracts, privileges and good will of the concern."

And in *Pullman's Car Co.* v. *Transportation Company*, 171 U. S. 138, this was reiterated. The court, after observing that while the franchise was one of the things entering into the computation of market value of shares of stock, said (p. 154):

"The probable prospective capacity for earnings also enters largely into the market value, and future possible earnings again depend to a great extent upon the skill with which the affairs of the company may be managed. These considerations, while they may enhance the value of the shares in the market, yet do not in fact increase the value of the actual property itself. They are matters of opinion upon which

persons selling and buying the stock may have different views."

That this doctrine is the rule in California is clearly shown by *Bank of California* v. *San Francisco*, 142 California, 276, for in that case the court, speaking of such elements of value as "dividend or profit-earning power or good-will," said (p. 289):

"In this connection it will be observed that these elements, so far as they may enter into the value of shares of stock, would be included in an assessment of such shares to the stockholders."

The state banks and other corporations are assessed on their property. Conceding that every species of property is assessed which is specifically enumerated as taxable in the state constitution, it does not follow that the assessment of property as such includes good will, dividend earning power, confidence in the ability of the management, and all those other intangible elements which necessarily enter into the cash or selling value of shares of stock. As said in the passage already quoted from the *Pullman case, supra,* such elements "may enhance the value of the shares of stock in the market, yet they do not in fact increase the value of the actual property itself. They are matters of opinion upon which persons selling and buying the stock may have different views." In the argument at bar no law of the State was referred to requiring that the assessing officers in valuing the property of a corporation should assess as property its good will, its dividend earning power, the confidence reposed in its officers, etc. From this analysis it results that in the one case, that of national banks, not only the value of all the tangible property, but also the value of all the intangible elements above referred to is assessed and taxed, whilst in the other case, that of state banks and other moneyed corporations, their property is taxed, but the intangible elements of value which we have indicated are not assessed and taxed, the consequence being to give rise to the discrimination against national banks

and in favor of state banks and other moneyed corporations forbidden by the act of Congress.

In the argument at bar this conclusion, it is insisted, is avoided because, whilst under the text of the state statutes it may be that all the elements of value which are included in the assessment of shares of stock are not *eo nomine* assessed against state banks and other moneyed corporations as property, they are, nevertheless, assessed against such corporations under the denomination of "franchise," the duty of the assessing officer to do so being imperative, as the result of the interpretation given to the taxing law by the Supreme Court of the State. The proposition is thus stated in the argument of counsel:

"Under the California system, all the property of California corporations is assessed, including their franchises. It is frequently the case that the market value of the stock of the corporation is greatly in excess of the value of its property, other than its franchise. This fact was called to the attention of the state court, which recognized the force of this suggestion, and held the constitution and laws of the State require the assessment and taxation of the franchise of the corporation, and that its value for the purpose of such assessment and taxation was properly ascertained by deducting from the market value of its stock the value of its corporate property and assessing the remainder as franchises."

It may be conceded that if the statutes have been interpreted by the Supreme Court of the State as thus asserted, and that as so interpreted they have been applied by the assessing officers, there would be an end to the discrimination which we have seen arises from the consideration of the result of the statutes when not so interpreted.

The question then is, do the decisions of the Supreme Court of California, as contended, place the positive duty on the assessor of including in an assessment of the franchises of state corporations all the elements of value which form part of the market or selling value of shares of stock?

Three cases are cited to sustain the proposition, viz., *San José Gas Company* v. *January,* 57 California, 614; *Spring Valley Water Works* v. *Schottler,* 62 California, 69, and *Bank of California* v. *San Francisco,* 142 California, 276.

Before coming to consider the last case cited, which is the one principally relied upon, we dispose of the two others by saying that they do not support the proposition. The first simply decided that where a part of a tax was asserted to be illegal and a part was admitted to be valid, the duty existed to pay the confessedly legal part to justify relief concerning the portion claimed to be illegal. The second case but decided that the franchises of corporations were taxable as property, and where a corporation enjoyed other franchises than the right to exist as a corporation, and the board of equalization in assessing such franchises had treated them as equivalent in value to the selling value of the capital stock, the courts had no power to interfere with the discretion lodged in the assessing officers. In the last cited and latest decided case, *Bank of California* v. *San Francisco,* the controversy was this: The Bank of California was assessed on its property. The difference between the value of such property and the cash or selling or market value of the shares of stock of the corporation was $2,943,096.92. The franchise, instead of being assessed for this amount, was valued only at $750,000. This valuation was resisted by the bank, upon the ground that it was so large that it must have included good will, dividend earning capacity, etc., which, it was asserted, could not under the law be embraced in an assessment of franchises. The court elaborately reasoned (there being two dissenting judges) that in view of the power of the assessors to value property it "could not say" that the assessing officers had transcended their authority in making the valuation complained of. Speaking of the duty of the assessing officers, it was said (p. 288):

"'The duty of making the valuation was cast upon the assessor. The method of arriving at the valuation, the process

by which his mind reached the conclusion (in case where, as here, it is not pretended that he acted fraudulently or dishonestly) is matter committed to his determination.' . . . This appears to be determinative of the contention here made. . . (p. 289): Whether or not the whole difference between the aggregate market value of the shares of stock and the value of the tangible property, viz., $2,943,096.92—was the value of the franchise, the assessor certainly had the right to take the value of the shares into consideration in determining the value of the franchise; and were we at liberty to review the judgment of the assessor and of the board of equalization upon those matters, we could not say that an assessment of $750,000 thereon is unjust, or that it includes such elements as dividend or profit-earning power, or good will, which, it is claimed, should not be taken into consideration in determining the value of the property of the corporation.''

After pointing out that these elements entered into the assessment of shares of stock at their market value, it was observed (p. 289):

"It is clear that if the laws of the State properly express the intention that everything that gives value to the shares of a corporation shall be assessed as property of the corporation, the true value of those shares is a most important element in determining the value of such property."

In other words, the court simply declared that *if* the law of the State properly expressed the purpose to tax everything of value, the assessor had a discretion to consider what was the selling value of shares of stock in fixing the value of the franchise. Instead of supporting the contention that the law obliged the assessor to attribute to the franchise the value of those intangible elements which it was conceded were embraced in the assessment of shares of stock, the reasoning of the opinion is to the contrary. As the cash, selling or market value of the stock in the case before the court was conceded to have been nearly three million dollars greater than the

tangible property assessed to the corporation, and the assessor had valued the franchise not at that sum, but at only $750,000, it is patent that if the law of California had been what it is now asserted the court held it to be, that the claim that there was an overvaluation of the franchise would have been so frivolous as to require only a statement of the law to decide against the claim of overvaluation.

But the court made no such statement.  On the contrary, it stated its inability to judicially declare that an assessment was extravagant and grossly unjust which was more than two millions lower than it should have been if the law imposed the obligation on the assessor of valuing the franchise by the difference between the value of the tangible property assessed and the cash or selling value of the shares of stock.  This inability to give relief was placed solely upon the discretion which the law lodged in the assessor.  But this interpretation of the statute serves only to further demonstrate the discrimination which has been previously pointed out.  The result is made clear by comparing the discretion lodged in the assessor in valuing the franchise of state banks or other moneyed corporations with the duty resting on him as to the valuation of shares of national banks.  The wide difference between the *discretion* on the one hand and the *duty* on the other will be additionally demonstrated by a consideration of the discrimination against national banks which has arisen in the practical execution of the statutes.

In the agreed statement of facts it was admitted that there are in the State of California one hundred and seventy-eight commercial (or state) banks, possessing a vast amount of capital, eighteen of which were located in San Francisco. And, to quote from the statement, " that the manner in which franchises of commercial banks and trust companies were assessed for said fiscal year ending June 30, 1901, by the assessor of the city and county of San Francisco, is illustrated by the case of the Bank of California, a banking corporation organized under the laws of the State of California."  The

assessment in question, which it is thus declared in the statement of facts is illustrative of the other assessments against state banks, was the one which was involved in the controversy decided in the *Bank of California case, supra.* It is then recited in the agreed statement that the total property resources of the Bank of California, correcting a misprint in the record, were $5,156,903.08; and that the market or selling value of its capital stock was $8,100,000, a difference of $2,943,096.92; and that, deducting from the resources of the bank certain exemptions, the bank was assessed for property at $2,311,774. To this last mentioned sum was added for franchise tax, not the difference between the value of the property and the selling value of the stock, which, as stated, was nearly three millions of dollars, but only $750,000. It is insisted in argument that this statement shows but a single case of undervaluation of a state bank by the assessors, and therefore does not justify the conclusion that in the exercise of their discretion the assessors had not generally, as to state banks and corporations, valued the franchises at less than the difference between the value of the property taxed and the market or selling value of the stock. But this contention disregards the fact that, by the agreed statement, it was expressly admitted that the assessment in question was illustrative of the assessments upon the other state banks and moneyed corporations. In view of the issues in the cause, as to which the facts were agreed, to say that the assessment in question only illustrated the case of the Bank of California would require us to disregard the agreed statement.

Finally, it is contended that, even if the state banks and other state moneyed corporations were assessed as illustrated by the valuation placed on the Bank of California, the complainant national bank has no reason to complain because the assessment put upon its shares of stock was relatively no higher than that put upon the Bank of California, and therefore no discrimination was occasioned. This is predicated upon the fact that the value per share affixed to the stock of

the complainant national bank was not higher, having sole reference to the value of the stock as shown by the book value of the assets, and, considering allowable deductions, than was the assessment put upon the Bank of California, considering alone the same elements.    But there is no proof whatever that the stock of the complainant bank had a market or selling value higher than the value affixed to it by the assessor; and the items which were made the basis of the assessment against the stock are declared in the agreed statement to be the entire assets of the bank, and in the argument at bar on behalf of the assessor the value of the shares of stock of the bank in excess of their book value is assumed to have been only nominal.    The proposition, therefore, comes to this, although the complainant national bank was assessed at the full value of its stock, there was no discrimination in favor of the state bank, albeit there was a difference in excess of two millions of dollars between the value put upon the property and franchise of the state bank and the sum which should have been levied against it, if all the elements had been assessed which enter into the value of shares of stock.    And, thus analyzed, the contention is again reducible to this proposition, that where property of one person worth a given amount is assessed for its full value no discrimination in favor of another results when the latter is assessed for a sum greatly below the value of the property assessed.

What has just been said disposes also of the contention that if the national bank had been assessed under the state law by the rule applied to state banks it would have had affixed to its property a slightly higher valuation than was given as the value of the shares of its capital stock.    Without stopping to point out the error in the calculation by which this result is supposed to be demonstrated, it suffices to say that the contention would have merit only in the event that the property and franchise of all state banks had no higher value than the book value of the shares of stock.    The fallacy underlying the whole contention cannot better be made clear than by

the mere reiteration of the statement that, under the facts
as agreed, it is obvious that the shares of stock of the na-
tional bank were assessed for all they were worth under the
rule of market or selling value, whilst the state bank was
only assessed for $750,000 above the book value of the
stock, although the cash, selling or market value would
have required an assessment of nearly three millions of dol-
lars.

Many contentions were argued at bar involving the asser-
tion that the state law was invalid because of deductions of
debts or exempt property which, it was asserted, the law
allows to state banks and other moneyed corporations on an
assessment of their property and does not allow holders of
shares of stock in national banks. Most of these contentions
are in effect disposed of by the consideration which we have
given to the proposition that the state law was void simply
because it established different methods of taxation as to the
two classes of corporations. In so far as the contentions
referred to are not in effect disposed of by our conclusions on
that subject, we content ourselves with saying that we think
all such propositions were rightly decided by the court below
to be without merit, for the reasons expressed in the opinion
delivered by that court in the *Nevada Bank case,* to which the
court referred and upon which it placed its rulings. We de-
cide this case solely upon the record before us. Our conclu-
sion, therefore, does not deny the power of the State of Cali-
fornia to assess shares of stock in national banks, provided
only the method adopted does not produce the discrimination
prohibited by the act of Congress. From this, of course, it
would follow that if the statutes of California, either from their
text or as construed by the highest court of that State, com-
pelled the assessing officers in the valuation of the property
of state banks and other state moneyed corporations to in-
clude all those elements of value which are embraced in the
assessment of shares of stock in national banks so that there
would be an equality of taxation as respects national banks,

the discrimination which we find to exist under the present state of the law of California would disappear.

> *The decree of the Circuit Court of Appeals is reversed; the decree of the Circuit Court is also reversed, and the cause is remanded to the Circuit Court for further proceedings in conformity with this opinion.*

MR. JUSTICE BREWER, with whom the CHIEF JUSTICE, MR. JUSTICE BROWN and MR. JUSTICE PECKHAM concur, dissenting.

I am unable to concur in the foregoing opinion, and, believing that a grevious wrong is done to the State of California, will state the reasons for my dissent. Section 5219, Rev. Stat., prescribes the conditions and limitations of state taxation of national banks. In reference to it we said in *Owensboro National Bank* v. *Owensboro*, 173 U. S. 664, 669:

"This section, then, of the Revised Statutes is the measure of the power of a State to tax national banks, their property or their franchises. By its unambiguous provisions the power is confined to a taxation of the shares of stock in the names of the shareholders and to an assessment of the real estate of the bank."

By the section two restrictions, and two only, are placed on the power of the State to tax the shares of stock: "That the taxation shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such State, and that the shares of any national banking association owned by non-residents of any State shall be taxed in the city or town where the bank is located, and not elsewhere."

No uniform rule is prescribed by Congress as to the mode of assessment or the manner in which the State shall impose its burden of taxation on the shares of stock in national banks. Each State is left to determine that according to its own judgment. All that is demanded is that in fact neither the rate of tax nor the assessment shall discriminate against national banks, and that the property subject to taxation shall not be

burdened in excess of the burdens cast upon other moneyed capital.  *Davenport Bank* v. *Davenport*, 123 U. S. 83.

The mandate of section 1 of the constitution of California is:

"All property in the State, not exempt under the laws of the United States, shall be taxed in proportion to its value, to be ascertained as provided by law.  The word 'property,' as used in this article and section, is hereby declared to include moneys, credits, bonds, stocks, dues, franchises, and all other matters and things, real, personal and mixed, capable of private ownership."

Thus the constitution requires the taxation of all property and a taxation in proportion to its value, and defines property as including everything capable of private ownership.  Certainly, if the mandate of the constitution is expressed in the statute the shares of stock in national banks will be subjected to the same rate of taxation as all other property in the State, including therein moneyed capital.  It must, therefore, be held that the legislation respecting the taxation of national bank shares is in defiance of the state constitution before it can be adjudged in conflict with the equality provision of section 5219, Rev. Stat.  Or, in other words, that the legislature of California disregarded the requirements of their own constitution in order to subject to taxation property protected by Federal laws.

The legislation of California in this regard is found in section 3608 of the Political Code, as amended in 1899, and two additional sections enacted in that year, numbered 3609 and 3610:

"SEC. 3608.  Shares of stock in corporations possess no intrinsic value over and above the actual value of the property of the corporation which they stand for and represent; and the assessment and taxation of such shares, and also all the corporate property, would be double taxation.  Therefore, all property belonging to corporations save and except the property of national banking associations not assessable by Federal statute shall be assessed and taxed.  But no assessment shall

be made of shares of stock in any corporation, save and except in national banking associations, whose property, other than real estate, is exempt from assessment by Federal statute.

"Sec. 3609. The stockholders in every national banking association doing business in this State, and having its principal place of business located in this State, shall be assessed and taxed on the value of their shares of stock therein; and said shares shall be valued and assessed as is other property for taxation, and shall be included in the valuation of the personal property of such stockholders in the assessment of the taxes at the place, city, town, and county where such national banking association is located, and not elsewhere, whether the said stockholders reside in said place, city, town, or county, or not; but in the assessment of such shares each stockholder shall be allowed all the deductions permitted by law to the holders of moneyed capital in the form of solvent credits, in the same manner as such deductions are allowed by the provisions of paragraph six of section thirty-six hundred and twenty-nine of the Political Code of the State of California. In making such assessment to each stockholder, there shall be deducted from the value of his shares of stock such sum as is in the same proportion to such value as the total value of its real estate and property exempt by law from taxation bears to the whole value of all the shares of capital stock in said national bank. And nothing herein shall be construed to exempt the real estate of such national bank from taxation. And the assessment and taxation of such shares of stock in said national banking associations shall not be at a greater rate than is made or assessed upon other moneyed capital in the hands of individual citizens of this State.

"Sec. 3610. The assessor charged by law with the assessment of said shares shall, within ten days after he has made such assessment, give written notice to each national banking association of such assessment of the shares of its respective shareholders; and no personal or other notice to such shareholders of such assessment shall be necessary for the purpose of this

act. And in case the tax on any such stock is unsecured by real estate owned by the holder of such stock, then the bank in which said stock is held shall become liable therefor; and the assessor shall collect the same from said bank, which may then charge the amount of the tax so collected to the account of the stockholder owning such stock, and shall have a lien, prior to all other liens, on his said stock, and the dividends and earnings thereof, for the reimbursement to it of such taxes so paid."

The rule of valuation is prescribed by the fifth subdivision of section 3617 of the Political Code, which provides that "the terms 'value' and 'full cash value' mean the amount at which the property would be taken in payment of a just debt due from a solvent debtor." It is true that prior to 1881 market value was made the rule of valuation, but the section prescribing that rule was, so far as it applied to national bank shares, adjudged void by the Supreme Court of the State, *Miller* v. *Heilbron*, 58 California, 133, and wholly repealed by the legislature (Stat. 1881, p. 59), and in lieu of that the present rule of valuation established. But the rule of valuation is not so material, and doubtless an established market value would be the amount at which property would be taken in payment of a just debt due from a solvent debtor. The main thing is that the same rule of valuation shall be applied to the assessment and taxation of national bank shares as of other moneyed capital. And the express declaration of section 3609 is that the shares in national banks "shall be valued and assessed as is other property for taxation."

From the sections quoted it appears that the method of reaching the property of state corporations for purposes of taxation is by treating the corporation as owner of all and casting the burden of taxation directly upon it, while on the other hand, in obedience to the requirements of the Federal statute, taxation in respect to national banks is limited to an assessment and taxation of the shares of stock. But there is no discrimination if the same property is reached by each.

method and by each subjected to the same rule of valuation. By section 3608 all the property of state corporations must be assessed and taxed, and the word "property" is defined by the constitution to include not merely tangible assets but also "franchises, and all other matters and things, real, personal, and mixed, capable of private ownership." Everything, therefore, which is a part of the property of a state corporation is subject to assessment and taxation. No other or larger burden is cast upon shares of national banks, and surely there can be no discrimination when the entire property in the one instance is taxed as a whole to the corporation and in the other instance subdivided and taxed to the stockholder. The whole is neither less nor more than all its parts. But it is said there is no specific command to include in the property of a state corporation the good will, dividend earning power and the like, and that they are necessarily included in the selling value of the stock of any corporation. It is true, these items are not in terms mentioned, but neither are desks and furniture. The language is general, so general that it includes everything, not excepting good will, dividend earning power and the like, for they are "capable of private ownership." They belong to the corporation. There is no good will in a share of stock over and above the good will which belongs to the corporation, and if the corporation sells and conveys all that it possesses "capable of private ownership," it sells and conveys its good will, and there is nothing left of good will or anything else belonging to the stockholders. This is so plain that he who runs may read. It is hardly necessary in a matter so clear to refer to the decisions of the Supreme Court of California, and yet they are direct upon the proposition. Thus in *Burke* v. *Badlam,* 57 California, 594, the court said (pp. 601, 602):

"Now, what is the stock of a corporation but its property—consisting of its franchise and such other property as the corporation may own? Of what else does its stock consist? If all this is taken away, what remains? Obviously nothing.

*When, therefore, all of the property of the corporation is assessed
—its franchise and all of its other property of every character—
then all of the stock of the corporation is assessed, and the man-
date of the constitution is complied with.*   This property is held
by the corporation in trust for the stockholders, who are the
beneficial owners of it in certain proportions called shares,
and which are usually evidenced by certificates of stock.   The
share of each stockholder is undoubtedly property, but it is
an interest in the very property held by the corporation.   It
is his right to a proportionate share of the dividends and other
property of the corporation—nothing more.   When the prop-
erty of the corporation is assessed to it, and the tax thereon
paid, who but the stockholders pay it?   It is true that it is paid
from the treasury of the corporation before the money therein
is divided, but it is substantially the same thing as if paid from
the pockets of the individual stockholders.   To assess all of
the corporate property of the corporation, and also to assess
to each of the stockholders the number of shares held by him,
would, it is manifest, be assessing the same property twice,
once in the aggregate to the corporation, the trustee of all the
stockholders, and again separately to the individual stock-
holders, in proportion to the number of shares held by each.
As well might it be contended that the property of a partner-
ship should be assessed to the firm, and in addition, that the
interest of each partner in the firm property should be assessed
to him individually.   If I have an interest in partnership
property, my interest therein is property.   It is the right I
have to share in the profits and property of the firm, in pro-
portion to the interest I own.   But my property rights are
confined to the property held by the firm, just as the property
rights of the stockholder in the corporation are confined to the
property held by the corporation.   In the case of the partner-
ship, take away all of the property of the firm, and I have no
longer any property as a partner.   In the case of the corpo-
ration, take away all of its property, which, it must be re-
membered, includes its franchise, and the shareholder no longer

has any property.  The cases are parallel.  If in the one case it is competent to assess to the corporation all of the property held by it, and to the individual stockholders the respective interest owned by each therein, so must it be competent to assess to every partnership the property held by the firm, and to each individual partner his interest therein.  It is clear to our minds that in the one case the partner and in the other the stockholder would be compelled to pay twice on the same property, which is neither required nor permitted by the constitution.  *In the case of the corporation to which we have referred the legislature has declared that all of the property held by such corporations shall be assessed to them.  It has not attempted to exempt any property from taxation not exempted by the constitution itself, and of course could not do it if it had.  It has only said that the property shall be assessed to the corporation, and shall not be again assessed for the same tax.  This it had the right to say."*  (Italics in this and succeeding quotations are mine.)

It will be seen from this quotation that the court places partnerships on the same basis as corporations.  If the partnership sells out its property, including its good will and its profit earning power, which are part of its property under the constitutional definition of property, there is nothing left to the separate partners.  The whole thing has passed to the purchaser, and in the same way when a corporation makes a sale.  And to hold that the good will and profit earning power must be specifically mentioned is to hold that the constitutional definition of property is insufficient; that good will and profit earning power are not "capable of private ownership," or do not belong to the corporation.  *Burke* v. *Badlam* was reaffirmed in *Bank of California* v. *San Francisco*, 142 California, 276, decided since the decision of this case by the Court of Appeals.  This case is very instructive.  It was an action brought by the plaintiff, a state bank, to have an assessment of its franchise declared illegal and void, and to recover the amount paid by it under protest as taxes thereon.  The contention of the

plaintiff was that it did not own or possess any franchise whatever, that the only franchise in any way connected with it was the corporate franchise, the franchise of being a corporation, which was the property of the stockholders and not assessable or taxable to the corporation. It appears from the opinion that the assessor found that the aggregate value of the tangible property of the bank was $5,156,903.08, that the market value of all the shares of the capital stock was $8,100,000, and the difference between the two was by him ascertained and determined to be the value of the franchise of the bank. The State was not challenging the assessment, and of course no inquiry was made as to the propriety of an increase in the valuation.

In reply to the contention of the plaintiff the court uses this language:

"It was said by the Supreme Court of the United States, in *Society for Savings* v. *Coite*, 6 Wall. 594, 606: 'Corporate franchises are legal entities vested in the corporation itself as soon as it is *in esse*. They are not mere naked powers granted to the corporation, but powers coupled with an interest which vest in the corporation, upon the possession of its franchises, and whatever may be thought of the corporators, it cannot be denied that the corporation itself has a legal interest in such franchises.'

"If this corporate franchise is assessable as property, then, that it must be assessed to the corporation instead of the members or stockholders is clearly settled in this State by the decision in *Burke* v. *Badlam*, 57 California, 594, *where it was held that a stockholder could not be assessed upon his certificate of stock, inasmuch as his shares were simply an interest in the very property held by the corporation, and the assessment of all the property of the corporation covered everything represented by the certificate.* (See also Pol. Code, § 3608.)"

Again, referring to *Burke* v. *Badlam, supra*, the court said (p. 285):

"This case necessarily involved the question as to the con-

stitutionality of section 3608 of the Political Code, prohibiting the assessment of shares of stock to the holders thereof.  Such shares being undoubtedly property, unless they were otherwise assessed, the section was clearly unconstitutional, in view of the provision of the constitution requiring *all* property to be taxed.  *According to the decision of the court they were under the law to be otherwise assessed—i. e., everything represented by the certificates was to be assessed to the corporation.*"

And again, on p. 289:

"Whether or not the whole difference between the aggregate market value of the shares of stock and the value of the tangible property—viz., $2,943,096.92—was the value of the franchise, *the assessor certainly had the right to take the value of the shares into consideration in determining the value of the franchise; and were we at liberty to review the judgment of the assessor and the board of equalization upon those matters, we could not say that an assessment of $750,000 thereon is unjust, or that it includes such elements as dividend or profit earning power, or good will, which, it is claimed, should not be taken into consideration in determining the value of the property of the corporation.  In this connection, it will be observed that these elements, so far as they may enter into the value of shares of stock, would be included in an assessment of such shares to the stockholders, a method of assessment which the State is at liberty to adopt,—in fact bound to adopt,—unless such shares are otherwise covered by the assessment of the property of the corporation.*

"It is clear that if the laws of this State properly express the intention that everything that gives value to the shares of a corporation shall be assessed as property of the corporation, the true value of those shares is a most important element in determining the value of such property."

I have made these extensive quotations from the opinions of the Supreme Court of California, for in cases like this we follow the construction placed by the highest court of the State upon its statutes.  Obviously, that court construes them as including within the corporate property the aggregate value

of all the shares of stock and that while they forbid the assessment and taxation of shares of stock in a state corporation, they require that all the value represented by those shares of stock be assessed and taxed against the corporation; so that when you ascertain the value of a single share of stock and multiply that by the number of shares in the corporation you have the value of the corporate property subject to taxation.

After declaring that the prohibition of the assessment and taxation of shares was clearly unconstitutional, unless they were otherwise assessed, it added, referring to the case of *Burke* v. *Badlam,* "according to the decision of the court they were under the law to be otherwise assessed, *i. e.,* everything represented by the certificates was to be assessed to the corporation." Now, if as claimed, the shares represent not merely the tangible property but the franchise, the dividend earning power, then, as stated, "everything represented by the certificates was to be assessed to the corporation." And this language is followed by the declaration, referring to dividends, profits, earning power, good will, etc.: "In this connection, it will be observed that these elements, so far as they may enter into the value of shares of stock, would be included in an assessment of such shares to the stockholders, a method of assessment which the State is at liberty to adopt,—in fact bound to adopt,—unless such shares are otherwise covered by the assessment of the property of the corporation." Reference is made to the use of the word "if" in the last paragraph of the quotation, as though that implied a doubt as to the meaning of the state statutes. But surely that cannot be, in view of the prior declaration in the same opinion, that "everything represented by the certificates was to be assessed to the corporation." The paragraph is to be read as though it said that provided the laws of the State properly express the intention, as we have already held that they do, then the true value of the shares is an important element in determining the value of the corporate property. The same word "if" is used at the commencement of the second paragraph of the quota-

tion "if this corporate franchise is assessable as property," in like manner, for the word "franchises" is found in the constitutional definition of property, the paragraph preceding "if" declares that "the corporation itself has a legal interest in such franchises," and the very paragraph says that "the assessment of all the property of the corporation covered everything represented by the certificate." Certainly it seems to me there is no justification in torturing this word "if" as overthrowing all the clear declarations of the court, as well as implying a destruction of the plain letter of the statutes.

But great reliance is placed upon the admission in the agreed statement of facts, "that the manner in which franchises of commercial banks and trust companies were assessed for said fiscal year ending June 30, 1901, by the assessor of the city and county of San Francisco, is illustrated by the case of the Bank of California, a banking corporation organized under the laws of the State of California." In the assessment of that bank the assessor did not add to the value of the tangible property the difference between that value and the market value of the capital stock, but a sum very much less. A tabulated statement is also annexed, showing the financial condition during the year of the 178 state banks of California. It might be sufficient to say that the stipulation is satisfied by a conclusion that the assessor in assessing state banks generally added to the value of the tangible property something on account of the franchise—we are not compelled to infer that to the valuation of the tangible property of each bank he added $750,000, or even that he failed to add the full difference between the value of that property and that of the stock. Indeed, it does not appear from the tabular statement that the market value of the shares in a single state bank in California exceeded the value of its tangible property. So that, so far as that evidence goes, the only case in which there was any franchise value to be added was that of the Bank of California. But more significant is this: It appears from the

agreed statement that the assessment complained of in this case was made in the following way:

"The defendant in making his assessment fixed the value of the shares for taxation at $104.35 each, and arrived at that valuation in the following manner: He added to the capital stock of the bank, $500,000, its undivided profits amounting to $77,260, deducted the face value of United States bonds held by it, $50,000, and the value of its furniture, $5,500, leaving $521,760 as the total assessable value, and dividing that by the number of shares made the assessable value of each share the sum above stated."

In other words, the only assessment against the plaintiff's shares was based upon the value of the tangible property. Not a dollar was added to the valuation on account of franchise, good will, or dividend earning power, or anything of that kind. Or, to put it in another form, the assessment of the state bank added to the value of the tangible property something for the value of the franchise, the assessment of the plaintiff stopped with the tangible property, and yet it is held that there was an actual unjust discrimination against the plaintiff. And how is this conclusion reached? By assuming that the shares in the plaintiff bank had no value above the value of the tangible property. But this is a mere assumption. A more rational guess would be that the shares of stock in a bank whose undivided profits were over fifteen per cent of its capital had a value much above the par value of its stock or the value of its tangible property. And can it be that the whole system of the legislation of a State in respect to the taxation of national banks can be stricken down upon an unfounded assumption that the shares of a given national bank were worth more than its tangible property? If the complaint was of an actual discrimination it was a part of the plaintiff's duty to prove it, and show that its shares had no value above that of the tangible property, and would not "be taken in payment of a just debt due from a solvent debtor" at a larger sum. The most elementary rule of judicial pro-

ceedings is that a party to make out his cause of action must prove, not assume, the existence of all essential facts.

But I need not rest upon the omission of proof. There is no allegation of any discrimination based upon such difference of valuation. The eleventh and twelfth paragraphs of the complaint state the wrongs on account of which relief is sought. In order that there may be no misunderstanding of the full scope of the causes of action alleged I quote these paragraphs entire:

"Eleventh.—That the said assessment and taxation, so as aforesaid threatened to be made and levied by the respondent upon the shares of the capital stock of your orator, will be in violation of, and repugnant to, the provisions of sections 5219 and 1977 of the Revised Statutes of the United States, in that the said assessment and taxation will be at a greater rate than is or will be assessed upon other moneyed capital in the hands of individual citizens of the said State of California. And in that behalf your orator shows that under and by virtue of the laws of the said State of California, all shares of stock in corporations organized under the laws of the said State and amounting to more than the sum of two hundred million dollars ($200,000,000), and especially in corporations organized under the laws of the said State for the purpose of banking, all shares of stock thereof amounting to more than the sum of thirty-five million dollars ($35,000,000), are expressly exempt from assessment and taxation, and the same are not subject thereto, and that the respondent has not assessed and will not assess, for the said fiscal year ending June 30th, 1901, and does not intend to assess, to the holders of shares in corporations organized under the laws of the said State of California, the value of the same, or to collect from such shareholders any taxes on said shares or the value thereof.

"And your orator further shows that the said pretended assessment and taxation so as aforesaid threatened to be made and levied by the respondent upon the shares of the capital stock of your orator will be in violation of, and repugnant to,

the provisions of said section 5219 of the Revised Statutes of the United States, in that the said taxation will be at. a greater rate than will be assessed upon any other moneyed capital in the hands of individual citizens in the State of California. And in that behalf your orator further shows that in assessing and taxing the said shares of the capital stock of your orator, no deduction will, or can legally, be made from the valuation of said shares, or any of them, of debts unsecured by deed of trust, mortgage or other lien on real or personal property due or owing by the stockholders of your orator, or by any of them, to *bona fide* residents of the State of California; and that in assessing and taxing other moneyed capital in the form of solvent credits unsecured by deed of trust, mortgage or other lien on real or personal property, due or owing to, or in the hands of, individual citizens in said State of California, the respondent does and will make a deduction from said credits, under and by the constitution and laws of the State of California, of the debts unsecured by trust deed, mortgage or other lien on real or personal property as may be owing by such individual citizens, or by any of them, to *bona fide* residents of the State of California, and that said threatened assessment and taxation of the shares of your orator is, and will be unjust, unlawful and illegal, and will discriminate against and upon such shares and against and upon the persons owning and holding the same, and will compel them to sustain and bear more than their just share and burden of the taxes of the said State of California. And in this behalf your orator further avers that it is informed and believes, and upon such information and belief states the fact to be, that the amount of moneyed capital in the city and county of San Francisco in said State of California on the first Monday of March, 1900, to wit, on March 5, 1900, at noon of said day, invested by banks and bankers, having their principal place of business in said city and county, and residents therein, in unsecured solvent credits, and from which, under the constitution and laws of said State, unsecured debts can be de-

ducted, was the sum of .$14,074,561; and on the day and year last aforesaid the amount of moneyed capital in the State of California, other than in the said city and county of San Francisco, invested by banks and bankers in unsecured solvent credits, and from which, under the constitution and laws of said State, unsecured debts can be deducted, was the sum of $7,589,302; that on the day and year last aforesaid said banks and bankers at said city and county of San Francisco had debts unsecured by trust deed, mortgage or other lien on real or personal property owing by such banks and bankers in said city and county, amounting to the sum of $36,710,062; and that on said day last aforesaid the amount of debts unsecured by trust deed, mortgage or other lien on real or personal property owing by said banks and bankers in the State of California, other than in the said city and county of San Francisco, was the sum of $32,400,304; that the amount of moneyed capital invested in such solvent credits by such banks and bankers on the day and year last aforesaid, in said city and county of San Francisco and in said State of California, as compared with the amount of moneyed capital invested in the shares of the capital stock of your orator, is so large and substantial that the assessment and taxation of the shares of the capital stock of your orator without deducting therefrom, and without being able to deduct therefrom, debts unsecured by trust deed, mortgage or other lien on real or personal property, as may have been owing by the respective holders of the shares of the capital stock of your orator on the day and year last aforesaid, will be an illegal and unjust discrimination against the owners and holders of the shares of the capital stock of your orator, and will make the taxation of said shares of stock at a greater rate than is imposed upon other moneyed capital in the hands of individual citizens in the State of California, and particularly in the city and county of San Francisco, in said State. And in this behalf your orator further avers that the said solvent credits so held as aforesaid by banks and bankers in the said city and county of San

Francisco and in the said State of California are moneyed capital in the hands of individual citizens of the State of California, which enter into competition for business with your orator.

"Twelfth.—That in the making of the said assessment of the said shares of the capital stock of your orator the respondent will not proceed in the manner directed by the said act of March 14, 1899, in this: That the said respondent, as hereinbefore set out, will ascertain and determine the value of each of the shares of the capital stock of your orator to be the sum of $115.452, and will deduct therefrom the sum of $11.10 per share as the proportionate amount per share of the value of the United States bonds held by your orator to secure its circulation, and of its furniture, and will, as hereinbefore set out, assess to the stockholders the sum of $104.36 per share as the value of each share of said capital stock by the said respondent claimed to be subject to assessment and taxation under the provisions of said act of March 14, 1899, and that the respondent will wholly fail and refuse to make any other or further deductions from such ascertained value of said shares, in order to determine the assessable value thereof, whereas, by the provisions of said section 3609 of the Political Code of the State of California, under and in pursuance whereof the respondent has threatened and intends to make the said assessment and will proceed to demand and will attempt to collect the taxes aforesaid, he was and is required to deduct from the value of each share of the capital stock of your orator, such sum as is in the same proportion to such value as the total value of the real estate and property of your orator exempt by law from taxation bears to the whole value of all the shares of the capital stock of your orator. That on the first Monday of March, 1900, to wit, on March 5, 1900, at twelve o'clock M. of said day, your orator had not, and thence hitherto has not had, nor has it now, any real estate, and as in paragraph 'Eighth' hereof averred, all of the property of your orator consisted on said day and at said time, and has

thence hitherto consisted, and does now consist of its bonds, money on hand, credits, furniture and other personal property, and on said day and at said time the same constituted and were, and thence hitherto have been, and now are, the assets of your orator, and were and are used and employed by it in the conduct and carrying on its business as a national banking association under and by virtue of the provisions of the act of the Congress of the United States known as the National Banking Act, and were and are exempt by law from assessment and taxation. That if deduction of all the property of your orator exempt from assessment and taxation as last aforesaid were made to each stockholder in assessing said stock there would remain nothing of value subject to assessment and taxation, and that the pretended assessment and taxation of said shares at said value of $104.36 per share would be based wholly upon supposed and fictitious property and upon property exempt by the Constitution and laws of the United States from assessment and taxation."

The first of these paragraphs alleges a violation of the Federal statute in the taxation of plaintiff's shares of stock, because under and by virtue of the laws of California all shares of stock in state corporations are exempt from assessment and taxation, and the assessor does not intend to assess to the holders the value of those shares. But, as repeatedly held, a mere difference in the methods of state and national bank taxation is not repugnant to the act of Congress. The balance of the paragraph is substantially a charge of a discrimination by reason of a failure to deduct debts. But that, it is conceded in the opinion of the court, may be put one side—a concession undoubtedly compelled by the facts as agreed upon, for an opportunity was given to each stockholder in the plaintiff bank to have any debts deducted, and no one of them sought to avail of this privilege.

The other paragraph charges a discrimination and that the assessor ascertained the value of the shares of the capital stock of the plaintiff at the sum of $115.452 and deducted therefrom

the sum of $11.10 per share as the proportionate share ot the value of United States bonds held by the bank; that he refused to make any further deductions, although the various items of property held by the bank, consisting of bonds, moneys, credits, etc., "were and are used and employed by it in the conduct and carrying on its business as a national banking association, under and by virtue of the provisions of the act of Congress of the United States, known as the National Bank Act, and were and are exempt by law from taxation." The complaint here is that the tangible property of the national bank is wholly exempt from taxation because used for the purpose of carrying on the banking business, and as the only assessment of plaintiff's shares was based upon the value of the tangible property the entire assessment was void. Now it is not pretended in the opinion·of the court, nor can it be successfully claimed in view of prior decisions of this court, that shares of stock in a national bank are subject to taxation to only the extent of the excess of their value above that of the tangible property of the corporation and yet that is the burden of plaintiff's complaint. I have made this extensive quotation because it is apparent therefrom that the matter which, in the judgment of the court is sufficient to overthrow the law of California in. respect to the taxation of national banks, was not charged or complained of by the plaintiff. If the plaintiff neither alleges nor proves any discrimination in the matter of valuation I cannot understand why this court should assume that there was one, and, thereupon upset the tax.

Further, there is no reference in the opinion of the Court of Appeals to any discrimination in fact.

Still further, counsel for plaintiff in error evidently fail to perceive any actual discrimination, as appears by this quotation from their brief:

"The questions involved in the appeal are:

"(1) That the act of 1899, providing for the assessment and taxation of shares of the capital stock of national banks,

is repugnant to the provisions of section 5219 of the Revised Statutes of the United States:

" (*a*) Because shares of stock in the commercial banks of the State are not taxed and are exempt;

" (*b*) Because by reason of the failure to tax shares in the commercial banks of the State, the shares of national banks are subjected to an adverse discrimination, and taxed at a higher rate than such commercial bank shares;

" (*c*) Because the provisions, section 3609, are wholly void, in that it is thereby undertaken to provide that a stockholder may deduct from the value of his shares the amount of his debts due to *bona fide* residents of the State.

" (2) That under the express provision of the Political Code, section 3608 and section 3609, the whole property of the appellant included in the assessment was exempt from taxation."

The only reference to discrimination is the alleged legal one, "by reason of the failure to tax shares in the commercial banks of the State." If the failure to tax shares in the commercial banks of the State does not of itself work a discrimination, as is practically conceded in the opinion of the court, then the whole basis of plaintiff's complaint fails.

Summing the matter up, the state constitution declares that "all property . . . shall be taxed in proportion to its value," and defines "property" as including "franchises, and all other matters and things, real, personal, and mixed, capable of private ownership." Franchises, dividend earning, profit earning power, are capable of private ownership. Indeed, the opinion of the court is based on the contention that they are assessed to the holder of shares in national banks and not assessed upon the state banks. Section 3608 provides that "all property belonging to corporations save and except the property of national banking associations, not assessable by Federal statute shall be assessed and taxed." Section 3609, that the shares in national banking associations "shall be valued and assessed as is other property for taxation." The

Supreme Court of the State holds that a stockholder in a state bank "could not be assessed upon his certificate of stock, inasmuch as his shares were simply an interest in the very property held by the corporation, and the assessment of all the property of the corporation covered everything represented by the certificate." There is neither allegation nor evidence that there was any overvaluation of the plaintiff's shares of stock. The complaint is that there was a discrimination by reason of the failure to deduct from the value of the shares the entire value of the bank's tangible property, because "used and employed by it in the conduct and carrying on its business as a national banking association." And yet in the face of the plain words of the constitution and statutes, the clear language of the Supreme Court of California, and the absence of allegation or proof of actual discrimination, this court, by its opinion, strikes down the whole system of California for the taxation of shares of national banks.

But beyond and aside from the matters which I have considered, and conceding, for the purposes of the following suggestion, that the law of California providing for the taxation of shares of stock in national banks is invalid, still I insist that the decree of the Court of Appeals ought to be affirmed. This is an equitable suit brought in the United States court, where the distinction between law and equity is constantly enforced. Upon the theory of the opinion, the tax upon the shares of stock in the plaintiff bank was illegal. The statute of California imposing that tax was void. Now, there are two propositions which have entered into the jurisprudence of this court so thoroughly that they may be regarded as settled law: First, that equity will not interfere where there is a plain, adequate and complete remedy at law; and, second, that injunction will not issue to restrain the collection of a tax simply on the ground of its illegality. The first is not only the rule of the Court of Chancery in England, but it is the command of the Federal statute. Section 723, Rev. Stat., reads: "Suits in equity shall not be sustained in either of the courts of the

United States in any case where a plain, adequate, and complete remedy may be had at law."

This defense was pleaded by the defendant in his answer, the sixteenth paragraph of which reads as follows:

"And respondent further submits to this honorable court that complainant has a full, complete, speedy and adequate remedy at law against respondent for all causes of action or causes of actions, stated or attempted to be stated in complainant's bill of complaint on file in this action; and he here claims the same benefit of the objection as if he had not demurred to the relief so sought."

Even if it had not been formally pleaded, the matter is one which this court of its own motion would consider and determine. As said in *Wright* v. *Ellison,* 1 Wall. 16, 22:

"But this is a suit in equity. The rules of equity are as fixed as those of law, and this court can no more depart from the former than the latter. Unless the complainant has shown a right to relief in equity, however clear his rights at law, he can have no redress in this proceeding. In such cases, the adverse party has a constitutional right to a trial by jury. The objection is one, which though not raised by the pleadings nor suggested by counsel, this court is bound to recognize and enforce."

It is unnecessary to cite the many cases in this court in which this rule has been recognized, the latest being *Scottish Union Insurance Co.* v. *Bowland,* the opinion in which has just been filed, 196 U. S. 611, though reference may be made to the discussion by Mr. Justice Field in *Whitehead* v. *Shattuck,* 138 U. S. 146, and in *Scott* v. *Neely,* 140 U. S. 106, and by Mr. Justice Brown in *Wehrman* v. *Conklin,* 155 U. S. 314. Now, in California there is a perfectly adequate legal remedy for cases of this nature. Section 3819 of the Political Code provides that "the owner of any property . . . who may claim that the assessment is void in whole or in part, may pay the same to the tax collector under protest, which protest shall be in writing, and shall specify whether the whole

assessment is claimed to be void, or if a part only, what portion, and in either case the grounds upon which such claim is founded; and when so paid under protest the payment shall in no case be regarded as voluntary payment, and such owner may at any time within six months after such payment bring an action against the county in the Superior Court, to recover back the tax so paid under protest." Such a remedy has, in a case of the taxation of national bank shares, been held by this court adequate and complete, and sufficient to exclude the interposition of a court of equity. In *Dows* v. *City of Chicago*, 11 Wall. 108, which was a bill filed by the owner of shares of the capital stock of the Union National Bank of Chicago, to restrain the collection of a tax levied by that city upon his shares, we said (p. 112):

"The equitable powers of the court can only be invoked by the presentation of a case of equitable cognizance. There can be no such case, at least in the Federal courts, where there is a plain and adequate remedy at law. And except where the special circumstances which we have mentioned exist, the party of whom an illegal tax is collected has ordinarily ample remedy, either by action against the officer making the collection or the body to whom the tax is paid. Here such remedy existed. If the tax was illegal, the plaintiff protesting against its enforcement might have had his action, after it was paid, against the officer or the city to recover back the money, or he might have prosecuted either for his damages. No irreparable injury would have followed to him from its collection. Nor would he have been compelled to resort to a multiplicity of suits to determine his rights. His entire claim might have been embraced in a single action."

And this case was reaffirmed by the unanimous opinion of this court in the late case of *Pittsburg &c. Railway* v. *Board of Public Works*, 172 U. S. 32, in which the quotation I have just made is also quoted.

The second proposition to which I have referred has also been often decided. Out of the many decisions I refer to only

two or three. *Dows* v. *City of Chicago, supra,* in which is this language (p. 109):

"Assuming the tax to be illegal and void, we do not think any ground is presented by the bill justifying the interposition of a court of equity to enjoin its collection. The illegality of the tax and the threatened sale of the shares for its payment constitute of themselves alone no ground for such interposition. There must be some special circumstances attending a threatened injury of this kind, distinguishing it from a common trespass, and bringing the case under some recognized head of equity jurisdiction before the preventive remedy of injunction can be invoked."

*State Railroad Tax Cases,* 92 U. S. 575, in which is this (p. 614):

"We do not propose to lay down in these cases any absolute limitation of the powers of a court of equity in restraining the collection of illegal taxes; but we may say, that, in addition to illegality, hardship, or irregularity, the case must be brought within some of the recognized foundations of equitable jurisdiction, and that mere errors or excess in valuation, or hardship or injustice of the law, or any grievance which can be remedied by a suit at law, either before or after payment of taxes, will not justify a court of equity to interpose by injunction to stay collection of a tax."

And in *Pittsburg &c. Railway* v. *Board of Public Works, supra,* in which the rule is thus stated (p. 37):

"The collection of taxes assessed under the authority of a State is not to be restrained by writ of injunction from a court of the United States, unless it clearly appears, not only that the tax is illegal, but that the owner of the property taxed has no adequate remedy by the ordinary processes of law, and that there are special circumstances bringing the case under some recognized head of equity jurisdiction."

But it may be said that in the following cases this court has laid down an apparently different rule in respect to the taxation of national bank shares: *People* v. *Weaver,* 100 U. S.

539; *Pelton* v. *National Bank,* 101 U. S. 143; *Cummings* v. *National Bank,* 101 U. S. 153; *Hills* v. *Exchange Bank,* 105 U. S. 319, and *Evansville Bank* v. *Britton,* 105 U. S. 322; *Lander* v. *Mercantile Bank,* 186 U. S. 458. The first was a writ of error to the Court of Appeals of the State of New York, and the mode of attack upon the law having been recognized by that court as proper, the question was not discussed here. In *Cummings* v. *National Bank, Pelton* v. *National Bank* being decided on its authority, the right to an injunction was asserted. The case came from the Circuit Court of the United States for the Northern District of Ohio, in which district the bank was located. In delivering the opinion of the court Mr. Justice Miller said on page 157:

"*But the statute of the State expressly declares* that suits may be brought to enjoin the illegal levy of taxes and assessments or the collection of them. Section 5848 of the Revised Statutes of Ohio, 1880; vol. 53, Laws of Ohio, 178, secs. 1, 2. And though we have repeatedly decided in this court that the statute of a State cannot control the mode of procedure in equity cases in Federal courts, nor deprive them of their separate equity jurisdiction, we have also held that, *where a statute of a State created a new right or provided a new remedy, the Federal courts will enforce that right either on the common law or equity side of its docket, as the nature of the new right or new remedy requires. Van Norden* v. *Morton,* 99 U. S. 378. Here there can be no doubt that the remedy by injunction against an illegal tax, expressly granted by the statute, is to be enforced, and can only be appropriately enforced on the equity side of the court.

"The statute also answers another objection made to the relief sought in this suit, *namely, that equity will not enjoin the collection of a tax except under some of the well known heads of equity jurisdiction,* among which is not a mere overvaluation, or the illegality of the tax, or in any case where there is an adequate remedy at law. The statute of Ohio expressly provides for an injunction against the collection of a tax illegally

assessed, as well as for an action to recover back such tax when paid, showing clearly an intention to authorize both remedies in such cases.

"Independently of this statute, however, we are of opinion that when a rule or system of valuation is adopted by those whose duty it is to make the assessment, which is *designed* to operate unequally and to violate a fundamental principle of the Constitution, and when this rule is applied not solely to one individual, but to a large class of individuals or corporations, that equity may properly interfere to restrain the operation of this unconstitutional exercise of power."

Two reasons are here stated to justify the exception to the ordinary rule in respect to injunctive relief. First, a state statute, and, second, a design on the part of the state authorities to discriminate. There is no statute of California making such special provision in reference to injunctions, and that reason for a departure from the general rule may be put one side. The other implies an intent on the part of the legislature or assessing officials to discriminate. It does not mean simply that there has resulted a discrimination but that one was intended. It is well known that in the early days of the national banking law there was a strong prejudice against it in different portions of the Union and adverse legislation in the way of burdensome taxation was not uncommon, and it was because of that fact that the court permitted the exercise of the strong powers of equity. That I am right in this and that there has never been an intent to apply a different rule to a national bank from that which has been in force in respect to other property is made clear by the language of Mr. Justice Miller in a subsequent case, *National Bank* v. *Kimball*, 103 U. S. 732, 735. Delivering the opinion of the court, he says:

"An apparent exception to the universality of the rule is admitted in *People* v. *Weaver*, 100 U. S. 539, *Pelton* v. *National Bank*, 101 U. S. 143, and *Cummings* v. *National Bank*, 101 U. S. 153. It is held in these cases that when the inequality

of valuation is *the result of a statute of the State designed to discriminate injuriously* against any class of persons or any species of property, a court of equity will give appropriate relief; and also where, though the law itself is unobjectionable, the officers who are appointed to make assessments *combine together and establish a rule or principle of valuation,* the necessary result of which is to tax one species of property higher than others, and higher than the average rate, the court will also give relief. But the bill before us alleges no such agreement or common action of assessors, and no general rule or discriminating rate adopted by a single assessor, but relies on the numerous instances of partial and unequal valuations which establish no rule on the subject."

This ruling was somewhat like the action of the court in *Stanley* v. *Schwalby,* 162 U. S. 255. That was a case coming from a state court. Ordinarily when the judgment is reversed the order is to remand the case for further proceedings not inconsistent with our opinion, but in view of action theretofore taken by the state court in the case we felt constrained to direct the very judgment which should be entered.

In *Lander* v. *Mercantile Bank, supra,* a decree dismissing the bill filed by the bank was affirmed. It is true in the opinion the merits of the bill were discussed, and nothing said about the right to maintain a suit in equity. Evidently the matter passed without consideration, and not unnaturally so, as the bill on its merits was dismissed.

In the case before us, whatever may be the effect of the statute in creating or opening the door to discrimination, no one can read it and say that there was an intent on the part of the legislature of California to discriminate injuriously against national banks. The statute is positive in its language that national bank shares shall be taxed and assessed as is other property, and there was beyond doubt an attempt on the part of the California legislature to cast only an equal burden of taxation on such shares. Of course, there ought not to be imputed to this court an intention to favor national

bank property in the matter of taxation and to lay down a rule for its benefit which is denied to all other property. So were I wrong in my construction of the state statute, beyond any peradventure the decree of the Circuit Court of Appeals ought to be affirmed and the bank remitted to its legal remedy.

I am authorized to say that the CHIEF JUSTICE, MR. JUS-TICE BROWN and MR. JUSTICE PECKHAM concur in this dissent.